Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
**EGLET ADAMS EGLET HAM HENRIOD**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

**THE SIMON LAW FIRM, P.C.**
Anthony G. Simon (*pro hac vice forthcoming*)
Jeremiah W. Nixon (*pro hac vice forthcoming*)
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com
*Attorneys for Plaintiffs and the Classes*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Daniel Valentini and Dallace Butler, individually and on behalf of all other similarly situated persons, bring this action against Defendant Reading International, Inc. for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and California Civil Code § 1799.3.

. . .

**NATURE OF THE CASE**

1. This is a consumer privacy class action against Reading International, Inc. and the movie theater chains it operates ("Reading Cinemas"), for knowingly disclosing consumers' movie purchases and video-viewing habits to third parties.

2. Reading Cinemas owns and operates movie theaters across the United States. It also owns and operates websites where consumers can watch trailers, browse showtimes, and purchase movie tickets. Reading Cinemas installed Facebook tracking technology on its websites.

3. In violation of the Video Privacy Protection Act, and unbeknownst to consumers, Reading Cinemas knowingly discloses consumers' Personally Identifiable Information when they purchase movie tickets online.

4. Also in violation of the Video Privacy Protection Act, and unbeknownst to consumers, Reading Cinemas knowingly discloses consumers' Personally Identifiable Information when they watch videos on Reading Cinemas' websites.

5. Specifically, when an individual has a Facebook account and they purchase a movie ticket or watch a video on Reading Cinemas' website, Reading Cinemas discloses to Facebook both the name of the movie purchased, or video watched, and the Facebook user's identity as a single data point.

6. The VPPA protects individuals from just this type of privacy violation and provides for statutory damages of $2,500 per violation.

7. Additionally, for consumers in California, these disclosures constitute a violation of California Civil Code § 1799.3.

8. Plaintiffs bring this action for damages and other legal and equitable remedies on behalf of themselves and all others who were similarly harmed by Defendant's violations of their privacy.

**PARTIES**

9. Plaintiff Daniel Valentini is an adult citizen of the State of New York who resides in the State of New York. Plaintiff Valentini has had a Facebook account since approximately 2008 and has used Defendant's website and purchased movie tickets on that website. Additionally, Plaintiff

1  Valentini has a member account with Defendant.

2      10.    Plaintiff Dallace Butler is an adult citizen of the State of California who resides in the State of California. Plaintiff Butler has had a Facebook account since approximately 2007 and has used Defendant's website and has purchased movie tickets on that website.

    11.    Defendant Reading International, Inc. ("Reading Cinemas") is a Nevada corporation with its principal place of business located in New York. Reading International owns and operates movie theaters across the United States under various brand names including: "Reading Cinemas," "Angelika Film Centers," and "Consolidated Theatres." Reading Cinemas' core business includes the promotion of movies through online trailers and other material, and the delivery of movies to consumers in its theaters.

**JURISDICTION AND VENUE**

    12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under a law of the United States: The Video Privacy Protection Act, 18 U.S.C. § 2710.

    13.    This Court has personal jurisdiction over Defendant because Reading International, Inc. is incorporated in the State of Nevada.

    14.    Venue is proper in this Court because this is a District in which Defendant Reading International, Inc. resides.

**FACTUAL BACKGROUND**

**A.    The Video Privacy Protection Act.**

    15.    In 1987, President Ronald Reagan nominated Judge Robert Bork, then a judge for the United States Court of Appeals for the D.C. Circuit, to the Supreme Court of the United States.

    16.    As the Senate's confirmation hearings were underway, a writer who lived near Judge Bork in Washington D.C.—and knew that Judge Bork's family rented movies at his neighborhood video store—went to the store and asked for a list of all movies rented by the Borks.

    17.    The video store provided the writer with a list of 146 movies. In turn, the writer published an article listing the movies rented by Judge Bork.

    18.    Although the Senate was sharply divided on Judge Bork's prospects as a Supreme Court Justice, there was bipartisan agreement—and outrage—over the video store's disclosure of

Judge Bork's movie rental history. Members of Congress expressed a broad desire to protect the right of privacy and intellectual freedom.

19. So, in response to "The Bork Tapes," Congress acted swiftly to pass the VPPA, thereby prohibiting businesses from disclosing consumers' video-watching choices. More specifically, the VPPA protects Personally Identifiable Information that identifies a specific person and ties that person to the videos requested or obtained.

20. As the VPPA made its way through the legislative process, Senators warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599, at 6-7 (1988).

21. Congress was troubled by disclosures of data that revealed consumers' purchases of goods and services from video providers. As Senators Patrick Leahy and Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," and that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599, at 7 (1988) (statements of Sens. Simon and Leahy, respectively).

22. As companies began to acquire more data about their customers, Congress enacted the VPPA to empower individuals "to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8 (1988).

23. The VPPA prohibits providers of pre-recorded video goods and services from disclosing "Personally Identifiable Information" of their customers.

24. The VPPA defines Personally Identifiable Information as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

25. Individuals can sue in civil court for damages, and to emphasize the seriousness of these privacy violations, Congress set minimum liquidated damages for a violation of the VPPA at $2,500 per violation. 18 U.S.C. § 2710(c)(2)(A).

. . .

26. Here, Defendant chose to deprive Plaintiffs and members of the classes of their rights under the VPPA by systematically disclosing their Personally Identifiable Information to Facebook without the statutorily required informed, written consent.

**B.    California Civil Code § 1799.3**

27. Additionally, like the VPPA, California Civil Code Section 1799.3 also prohibits the disclosure of personal information by anyone providing video recording sales or rental services.

28. Under Section 1799.3, individuals can sue in civil court for damages. The California State Legislature included a statutory civil penalty of up to $500 for each violation.

29. The civil penalty provided by Section 1799.3 does not affect any other relief or remedy provided by law.

30. Defendant chose to deprive California Plaintiffs of their rights under California Civil Code § 1799.3 by disclosing movie ticket purchases and video views without individuals' informed, written consent.

**C.    Facebook ID ("FID")**

31. A Facebook ID, or FID, is a unique and persistent identifier that Facebook assigns to each user. When an individual creates a Facebook account, a corresponding FID is assigned to that account.

32. Facebook, or any other ordinary person, can readily access any consumer's corresponding Facebook profile by simply appending the individual's FID to the end of "Facebook.com/."

33. Further, Facebook is a "real identity platform," meaning that users are allowed only one account and must share the name they use in everyday life. When creating an account, users must provide their first and last name, along with their birthday and gender.

34. The FID itself represents a particular individual. Therefore, as Facebook requires real names and information, Plaintiffs and class members are readily identifiable by their names, pictures, and other profile information accessible via the FID.

35. Plaintiffs and members of the classes all have accounts with Facebook; therefore, all are identifiable via their unique FID.

36. Facebook profits by selling advertising that targets users with specific experiences, likes, and preferences. The Facebook[1] Pixel, discussed below, is a piece of code that advertisers, like Defendant, can integrate into their websites to collect information on consumers.

**D.   Reading Cinemas has digital subscribers**

37. Consumers may register for an account with Defendant by providing their first name, last name, email, birthdate, and zip code. Upon information and belief, individuals are subject to additional tracking and data collection if they sign up for a digital account with Defendant.

38. Reading Cinemas promotes account creation by conferring extra benefits on consumers with accounts. Consumer membership accounts constitute subscriptions because there is an additional commitment, relationship, or association between the parties. Defendant consistently and persistently sends information and content to its subscribers.

39. In exchange for providing additional valuable personal information to Reading Cinemas, subscribers—including Plaintiff Valentini—receive weekly email newsletters, special offers, and enhanced access to movie tickets. Additional subscriber benefits include special events, discounts, and invitations to free movie screenings.

40. When opening an account, subscribers do not provide any written consent that would allow Defendant to share their personal viewing information with third parties, such as Facebook.

**E.   Reading Cinemas unlawfully discloses Personally Identifiable Information**

41. Reading Cinemas owns and operates websites for its movie theaters across America. *See e.g.*, https://www.readingcinemasus.com/; https://www.angelikafilmcenter.com/; and https://www.consolidatedtheatres.com/.

42. Two integral components of Defendant's business model are the delivery of movies to consumers in theaters and the delivery of movie trailers to consumers on its websites.

. . .

---

[1] The company that owns Facebook rebranded as "Meta" in 2021. Thus, this piece of code is sometimes referred to interchangeably as the "Facebook Pixel" or the "Meta Pixel." Facebook is a Meta-owned, distinct social media platform relevant to this case because it is the platform by which Plaintiffs and class members are identified. For simplicity and consistency, Plaintiffs refer to the code at issue as the "Facebook Pixel."

43. On these websites, Plaintiffs and other members of the classes watched movie trailers and purchased movie tickets.

44. On information and belief, Reading Cinemas collects and discloses Personally Identifiable Information about its consumers' ticket purchases and video views to Facebook.

45. In designing its websites, Defendant chose to install and configure certain code, referred to as the Facebook Pixel, thus making the knowing choice to collect its users' Personally Identifiable Information and disclose that information to Facebook.

46. The use of the Facebook Pixel is not necessary for Defendant to operate its websites. Rather, Defendant's installation of this code compels the collection of website users' activities and the associated disclosure to Facebook so Defendant can monetize and target advertisements to potential customers. The purpose of the disclosure is to enrich Defendant and Facebook.

47. At no point does Reading Cinemas receive informed, written consent—in a form distinct and separate from any form setting forth other legal or financial obligations—from users that would allow the disclosure of their Personally Identifiable Information to third parties.

48. The Facebook Pixel installed by Defendant collects data regarding the actions of customers. This includes the tracking and disclosure of which movies customers purchase tickets to watch. This also includes movie trailers viewed on Defendant's websites. Defendant's websites host the Facebook Pixel and send event data to Facebook when users take certain actions, as programed by Defendant.

49. If an individual with a Facebook account purchases movie tickets on Defendant's websites, the individual's FID and the name of the movie purchased are simultaneously disclosed to Facebook.

. . .

. . .

. . .

50. When a consumer purchases a movie ticket, Defendant discloses the identity of the customer and the movie purchased as depicted in Figure 1 below:

*Figure 1: HTTP single communication session sent from the device to Facebook, reveals the name of the movie the customer has proceeded to book, and the customer's FID (c_user field)*

51. If an individual with a Facebook account views movie trailers on Defendant's websites, the individual's FID and the name of the trailer watched are simultaneously disclosed to Facebook.

. . .

. . .

. . .

52. When an individual views a movie trailer, Defendant discloses the identity of the consumer and the video viewed as depicted in Figure 2 below:

```
▼ Request Headers
:authority:           www.facebook.com
:method:              GET
:path:                /tr/?id=2072687614867948&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Ffilm%2Fmean-girls-2024&rl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Fshowtimes-and-tickets%2Fnow-playing&if=false&ts=1705436022696&cd[buttonFeatures]=%7B%22classList%22%3A%22play-button%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22url(%5C%22https%3A%2F%2Fd994l96tlvogv.cloudfront.net%2Fassets%2Freading%2Fimg%2Fyoutube-play.png%5C%22)%22%2C%22innerText%22%3A%22%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22div%22%2C%22type%22%3Anull%7D&cd[buttonText]=&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22MEAN%20GIRLS%20%7C%20Movie%20Details%20%26%20Showtimes%20at%20Manville%20with%20TITAN%20LUXE%22%7D&sw=1920&sh=1080&v=2.9.140&r=stable&ec=2&o=4126&fbp=fb.1.1705360196423.1834374142&ler=other&it=1705436019491&coo=false&es=automatic&tm=3&cdl=&rqm=GET
:scheme:              https
Accept:               image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
Accept-Encoding:      gzip, deflate, br
Accept-Language:      en-US,en;q=0.9
Cache-Control:        no-cache
Cookie:               sb=Mr2IZRBUEjBZfK8oyQOTBy2v; datr=Mr2IZdc0W2Tt-gd4nKwoA1Q9; c_user=6155541█████; dpr=1;
                      xs=45%3APYRD8f_wwfb4Lw%3A2%3A1705413054%3A-1%3A-1%3A%3AAcX8o3hYHmqeOX1q4AtZ61P5bfGXbO4B052xppevAQ;
                      fr=1IVKem491uRrvtI9N.AWVV0OMUP3bRbJwxKej5uuU5zAQ.BIptMq.HM.AAA.0.0.BIptMq.AWXDXBQyEX0
```

*Figure 2: HTTP single communication session sent from the device to Facebook, reveals the movie trailer viewed, and the customer's FID (c_user field)*

53. Figure 1 and Figure 2 are examples and snippets of unlawful disclosures made by Defendant based on inspections of Defendant's websites. Any additional disclosures that Defendant makes to third parties of consumers' Personally Identifiable Information also constitute violations of the VPPA.

54. Facebook combines the FID with the specific videos requested or obtained by Plaintiffs and class members to further refine its ad targeting to those individuals.

55. Anyone can easily identify a specific individual by appending the disclosed "c_user" FID to "Facebook.com/" in a web browser. So, in violation of the VPPA, Defendant discloses—at the same time—the identity of the person and the specific video content requested or obtained by that individual.

. . .

## CLASS ALLEGATIONS

56. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23, on their own behalf, and also seek to represent the following proposed Nationwide Classes:

   a) The Movie Ticket Class: All persons in the United States (i) who purchased one or more movie tickets from Defendant's websites, and (ii) who were members of Facebook at the time they purchased the movie tickets.

   b) The Subscriber Video Class: All persons in the United States (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed the video clips, and (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant.

   c) The Movie Ticket and Video Class: All persons in the United States (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed video clips, and (iii) who purchased one or more movie tickets from Defendant's websites.

57. Plaintiff Butler also seeks to represent the following proposed California Subclasses:

   a) The Movie Ticket California Subclass: All persons in the California (i) who purchased one or more movie tickets from Defendant's websites, and (ii) who were members of Facebook at the time they purchased the movie tickets.

   b) The Subscriber Video California Subclass: All persons in California (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed the video clips, and (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant.

   c) The Movie Ticket and Video Subclass: All persons in the California (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed video clips, and (iii) who purchased one or more movie tickets from Defendant's websites.

58. Excluded from the Classes are Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns, and any entity in which any of them have a controlling interest, as well as judicial officers assigned to this case as defined in 28 U.S.C. § 455(b) and their immediate families.

59. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** Members of this class action are so numerous and geographically dispersed that joinder of all members of the classes is impractical. Given the volume of movie theater ticket sales, and related views of movie trailers, there are easily thousands of class members.

60. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):** Common questions of law and fact predominate over questions that may affect individual members of the classes. Common questions that will determine the outcome of this class action include:

   a. Whether Defendant knowingly installed the Facebook Pixel on its websites and programmed it to collect and disclose information, including movie title(s), when consumers purchase movie tickets on Defendant's websites;

   b. Whether Defendant knowingly installed the Facebook Pixel on its websites and programmed it to collect and disclose information, including video clips viewed, when consumers watch movie trailers on Defendant's websites;

   c. Whether the information disclosed to Facebook constitutes Personally Identifiable Information under the VPPA;

   d. Whether the information disclosed to Facebook constitutes "personal information or the contents of any record" under California Civil Code Section 1799.3.

   e. Whether Plaintiffs are consumers under the VPPA; and

   f. Whether Defendant disclosed Plaintiffs' Personally Identifiable Information without consent.

61. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Class, are Facebook users who purchased movie tickets from Defendant or watched video clips on Defendant's websites, and had their Personally

Identifiable Information collected and disclosed by Defendant.

62. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately protect the interests of the Classes because Plaintiffs and their experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Classes. Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex class action litigation and are committed to vigorously prosecuting this class action.

63. **Superiority (Fed. R. Civ. P. 23(b)(3):** Class treatment is the superior method for a fair and efficient adjudication of this controversy as individualized litigation of the claims of class members is impractical. Class treatment will permit thousands of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that individual lawsuits would entail. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

64. The complex nature of the litigation, along with the expenses associated with vigorous prosecution of these claims, renders individual lawsuits irrational and not economically viable.

65. Class certification is also appropriate for equitable or injunctive relief because Defendant has acted or refused to act on grounds that apply generally to the class such that final injunctive relief is appropriate for the Class as a whole.

### COUNT I

**Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710**
**(On behalf of Plaintiffs and the Nationwide Classes)**

66. Plaintiffs incorporate all foregoing paragraphs as though fully set forth herein.

67. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for privacy violations prohibited by the VPPA.

. . .

68. The VPPA prohibits a "Video Tape Service Provider" from knowingly disclosing "Personally Identifiable Information" concerning any consumer to a third-party without "informed written consent." 18 U.S.C. § 2710.

69. Defendant is a Video Tape Service Provider because it engages in the business of the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Put more simply: Defendant is a movie theater chain, and movie theaters sell and deliver movies and movie trailers.

70. Under 18 U.S.C. § 2710(a)(3), "Personally Identifiable Information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

71. For consumers purchasing movie tickets or watching video content on Defendant's websites, the information Defendant transmitted to Facebook without authorization constitutes Personally Identifiable Information because it identifies Plaintiffs and other class members by their FID and includes the specific movie ticket(s) purchased or videos viewed by that person.

72. Under 18 U.S.C. § 2710(a)(1), a "Consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiffs are consumers because they purchased goods or services from Defendant; they purchased movie tickets. Plaintiffs are also consumers who signed up for an account and receive subscriber benefits from Defendant.

73. Defendant knowingly disclosed Plaintiffs' Personally Identifiable Information to another person, Facebook, because Defendant chose to install the Facebook Pixel on its website and set the Pixel to send Facebook information that identifies specific movies purchased and/or videos viewed and the FID of the consumer making the purchase. Defendant knew that Facebook would identify a substantial number of the consumers who visited Defendant's website, and Defendant transmitted the information regarding which movies consumers purchased tickets for and/or which videos on the website the consumers viewed.

74. Plaintiffs and members of the Classes did not provide Defendant with any form of consent that would authorize it to disclose their Personally Identifiable Information to third parties. Nor did Defendant have authorization by means of court order or any other part of the VPPA.

# COUNT II

## Violation of California Civil Code § 1799.3
### (On behalf of Plaintiff Butler and the California Subclasses)

75. Plaintiffs incorporate all foregoing paragraphs as though fully set forth herein.

76. Cal. Civ. Code § 1799.3 prohibits a "person providing video recording sales or rental services" from disclosing "any personal information or the contents of any record, including sales or renal information, which is prepared or maintained by that person, to any person other than the individual who is the subject of the record, without the written consent of that individual."

77. Defendant is a "person providing video recording sales or rental services" under Cal. Civ. Code § 1799.3 because it is engaged in the business of promoting and selling movies, including by selling tickets and providing promotional video content to consumers on its websites.

78. Defendant is subject to California law because it owns and operates movie theaters in California and actively markets to consumers located in California. Plaintiff Butler lives in California and purchased movie tickets on Defendant's website to watch movies at one of Defendant's California movie theaters.

79. Defendant willfully disclosed personal information that identified Plaintiff Butler and members of the California Subclasses to Facebook identifying consumers as requesting or obtaining specific video materials. The information disclosed to Facebook constitutes personal information of Plaintiff Bulter and members of the California Subclasses and/or the contents of a record concerning Plaintiff Butler and the California Subclasses that Defendant maintained.

80. Plaintiff Butler and members of the California Subclass did not provide written consent that would permit Defendant to disclose their personal information. Defendant's disclosure of this personal information to Facebook violated Cal. Civ. Code § 1799.3.

## PRAYER FOR RELIEF

81. Wherefore, Plaintiffs, individually and on behalf of the proposed class, respectfully request that this Court:

    a. Enter an order certifying the Classes and Subclasses under Rule 23 of the Federal Rules of Civil Procedure;

b. Designate Plaintiffs as the representatives of the Classes and Subclasses and designate Plaintiffs' counsel as counsel for the Classes and Subclasses;

c. Declare that Defendant violated the Video Privacy Protection Act;

d. Order Defendant to pay a minimum of $2,500 to each Class member for each violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(c)(2)(A);

e. Award punitive damages in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

f. Grant appropriate injunctive relief;

g. Award reasonable attorneys' fees and costs and expenses, 18 U.S.C. § 2710(c)(2)(C);

h. Declare that Defendant violated California Civil Code § 1799.3.

i. Order Defendant to pay $500 to each member of a California Subclass for each violation of California Civil Code § 1799.3.

j. Award pre- and post-judgment interest; and

k. Grant such other relief as the Court deems just and equitable under the circumstances.

. . .

. . .

. . .

. . .

. . .

. . .

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

Dated: February 6, 2024

Respectfully submitted,

*/s/ Erica D. Entsminger*
Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
**EGLET ADAMS EGLET HAM HENRIOD**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

Anthony G. Simon (pro hac vice forthcoming)
Jeremiah W. Nixon (pro hac vice forthcoming)
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com
*Attorneys for Plaintiffs and the Classes*