MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
TYLER ANDREWS, ESQ.
Nevada Bar No. 9949
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

*Counsel for Plaintiffs*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No.: 2:24-cv-00255-RFB-MDC

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS**

**(Oral Argument Requested)**

Defendant Reading International, Inc. ("Defendant" or "Reading"), through undersigned counsel, moves to dismiss Plaintiffs Daniel Valentini and Dallace Butler's ("Plaintiffs") class action complaint (the "Complaint") for failure to state a claim and for lack of subject matter jurisdiction, or, in the alternative, to strike the class allegations. Defendant's motion is supported by the following memorandum of points and authorities.

//

//

//

//

//

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs allege that Reading disclosed personally identifiable information ("PII") to Facebook by utilizing the Facebook Tracking Pixel[1] to compel Plaintiffs' web browser to transfer Plaintiffs' PII, like her Facebook ID, movie tickets purchased, and the titles of the videos she viewed. Plaintiffs' action fails for multiple reasons.

First, Plaintiffs' Video Privacy Protection Act ("VPPA") claim should be dismissed because the VPPA's prohibitions apply only to "video tape service provider[s]," which Reading is not. Reading operates movie theaters and provides a website through which it sells movie tickets. Reading does not engage in the business of the "rental, sale, or delivery of prerecorded video cassette tapes." *See* 18 U.S.C. § 2710(a)(4). Nor are Plaintiffs "consumer[s]" under the VPPA because they do not "rent, purchase, or subscribe" to any "goods or services" from a video tape service provider. *See* 18 U.S.C. § 2710(a)(1). Indeed, all that Plaintiffs are alleged to have "purchased" here are movie tickets—not cassette tapes or similar audio visual materials. To that point, the Northern District of California's decision in *Garza v. Alamo Intermediate II Holdings, LLC* is illustrative. There, the court expressly rejected plaintiff's similar attempt to hold a movie theater liable under the VPPA. No. 23-cv-05849-VC, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024) ("The Video Privacy Protection Act claim is dismissed because <u>a movie theater operator like Alamo is not a 'video tape service provider' under the statute</u>." (emphasis added)). The Court should reach the same result here.

Second, Plaintiffs' parallel claim under section 1799.3 of the California Civil Code fails for the same reasons. *See id.* ("Garza's claim under section 1799.3 of the California Civil Code is dismissed. A movie theater operator like Alamo does not provide 'video recording sales or rental services."). Moreover, once the VPPA claim is dismissed, there is no further basis for federal subject matter jurisdiction and any remaining claims should be dismissed. *See Hallstrom v. Tillamook County*, 844 F.2d 598, 601 (9th Cir. 1987) ("Without federal jurisdiction, a federal court

---

[1] The Facebook Tracking Pixel is a common online analytics tool embedded into a website's coding that allows operators to measure and optimize audiences for advertising or marketing campaigns.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

has no power to hear state claims.”). As Plaintiffs’ complaint demonstrates, the only purported basis for jurisdiction is pursuant to 28 U.S.C. § 1331 “because this action arises under a law of the United States: The Video Privacy Protection Act.” Compl. ¶ 12. Without the VPPA claim, the California claim cannot proceed in this venue.

To the extent the Complaint is not dismissed in its entirety, Plaintiffs’ class allegations should be dismissed (either in part or altogether) because the proposed classes are not pursuable. For example, Plaintiffs seek to represent a proposed class of “[a]ll persons in the United States (i) who purchased one or more movie tickets from Defendant’s websites, and (ii) who were members of Facebook at the time they purchased the movie tickets.” Compl. ¶ 56(a). But, as stated above, *movie ticket sales are not protected by the VPPA*. *See Garza*, 2024 WL 1171737 at *1. Moreover, the proposed class is facially overbroad because it is not limited to individuals whose PII was actually disclosed (if disclosed at all, which Reading disputes) to a third party. *See, e.g.*, *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and overbroad where it included individuals who were not harmed). This class is not capable of being pursued or certified as a matter of law because the proposed class would consist of all persons regardless of whether their PII was improperly disclosed.

For these and the following reasons, Reading respectfully requests the Court dismiss Plaintiffs’ claims, or in the alternative strike all class allegations.

## II. RELEVANT ALLEGATIONS

Reading owns and operates Reading Cinemas, Angelika Film Centers, and Consolidated Theaters (in Hawaii only). Compl. ¶ 41. Plaintiffs’ Complaint alleges that Reading discloses PII by identifying, through Facebook’s Tracking Pixel, data regarding the actions of consumers regarding ticket purchases and movie trailers viewed. *See generally id.* ¶¶ 43, 48, 49. In particular, Plaintiffs allege that the Facebook Tracking Pixel “collects data regarding the actions of customers” including ‘which movies customers purchase tickets to watch” and “movie trailers viewed on Defendant’s websites.” *Id.* ¶ 48. Plaintiffs further allege that “[a]nyone can identify a specific individual by appending” a Facebook ID number “c_user” to “‘Facebook.com/’ in a web browser” and so, “in violation of the VPPA, Defendant discloses—at the same time—the identity of the person and the specific video content requested or obtained by that individual.” *Id.* ¶ 55.

On these allegations, Plaintiffs bring two claims, first a claim for violation of the VPPA, and second, a claim for violation of section 1799.3 of the California Civil Code, seeking to represent various nationwide and California classes of persons that were purportedly injured.

## III. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept all factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Ultimately, if the plaintiff's allegations "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

### B. Motion to Strike Class Allegations

A court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) requires the Court to accept the non-moving party's well-pleaded facts as true and to draw all reasonable inferences in favor of that party." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016) (citing *Farm Credit Bank of Spokane v. Parsons*, 758 F. Supp. 1368, 1371 n.4 (D. Mont. 1990)). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike the class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); *see also Cheatham*, 161 F. Supp. 3d at 834 (stating class allegations may be stricken when "it is clear from the face of the complaint that no class can be certified").

To maintain a class action, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one subsection of Rule 23(b). Implied in Rule 23 is the requirement that, in order for a class to be certified, the class must be ascertainable. *Davis v. Wells Fargo Advisors LLC*, No. CV-13-01963-PHX-NVW,

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

2014 WL 1370278 (D. Ariz. Apr. 8, 2014). Plaintiffs bear the burden of advancing a *prima facie* showing that the class action requirements in Rule 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Conclusory allegations and speculation are insufficient to meet this burden. *Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986).

## IV. ARGUMENT

### A. Plaintiff's VPPA Claim Should be Dismissed for Failure to State a Claim

To bring a VPPA claim, a plaintiff must plausibly allege that: "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). A consumer is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The terms "goods or services" and "subscriber" are not defined, and must be given their plain dictionary meaning. The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

According to Plaintiff's own allegations, however, Reading is not a video tape service provider. Indeed, Plaintiffs' allegations confirm that "Reading Cinemas owns and operates websites ***for its movie theaters***." Compl. ¶ 41 (emphasis added). Integral to running a movie theater is selling tickets, as Plaintiffs note. *See id.* ¶ 42. Accordingly, this case is no different than *Garza*, in which the District Court for the Northern District of California granted defendant's motion to dismiss on the basis that a movie theater operator "does not provide 'video recording sales or rental services,'" does not "rent or sell movies to moviegoers," and does not "deliver" movies to people who visit its theaters." 2024 WL 1171737 at * 1. Indeed, the court rejected each of plaintiff's attempts in that case to hold the VPPA applicable to "movie theaters." *Id.* (stating that plaintiff's purported definitions do "not cover movie theaters" and would require an unsupported "stretch" of the statutory language). Importantly, the court dismissed the complaint in its entirety ***without*** leave to amend "because the statutes simply do not cover what movie

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

theaters typically do and no amendment could fix that problem." *Id.* (emphasis added). Moreover, in footnote 1, the court (based on the party's representation) noted a telling distinction between "a streaming service, which could involve the rental, sale, or delivery of movies," *id.* at n.1, and the operation of a movie theater. Here, there is no claim that Reading operates, or that Plaintiffs ever subscribed to, an online streaming service.

Nor have Plaintiffs established through their pleadings that they are "consumers," (i.e., "renters," "purchasers," or "subscribers") as required under the VPPA. To the extent they contend to be "renters" or "purchasers," their arguments are foreclosed by *Garza* and the simple fact that the only thing they can even claim to have purchased were movie ***tickets***, not cassette tapes or "similar audio-visual materials." To the extent Plaintiffs attempt to proclaim themselves as "subscribers," they do not allege that they "subscribed" to any audio-visual materials simply by creating a Reading account. Indeed, by Plaintiffs' own allegations, a Reading "account" is free of charge and merely provides "weekly email newsletters, special offers, [ ] enhanced access to movie tickets," "special events, discounts, and invitations to free movie screenings." Compl. ¶ 39. Notably absent from these "account" benefits is the "rental, sale, or delivery" of "video tape cassettes or similar audio visual materials."

Two cases illustrating Plaintiffs' failure here and distinguishing Reading from actual video service providers makes the point clear. In *In re Hulu Privacy Litigation*, the court found plaintiffs to be subscribers only where they "signed up for a Hulu account [to watch videos], became registered users, received a Hulu ID, established Hulu profiles, ***and used Hulu's video streaming services***." No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (emphasis added).[2] And in *Ellis v. Cartoon Network, Inc.*, the court found that plaintiff's allegations that he "downloaded the [Cartoon Network] App and used it to watch video clips," necessarily tied the plaintiff (and his device) to defendant to make him a subscriber of audiovisual materials. No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014). These cases demonstrate the

[2] It should be noted that in the *Hulu* case, the court granted summary judgment to Hulu on the basis that there was "no evidence that Hulu knew that Facebook might combine a Facebook user's identity (contained in the c_user cookie) with the watch-page address to yield 'personally identifiable information' under the VPPA," and therefore "no proof that Hulu knowingly disclosed any user 'as having requested or obtained specific video materials or services'" as required by the VPPA. *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

only application of the VPPA is to cover a user's subscription ***for audio visual materials*** (i.e., online streaming services). To Defendant's knowledge, the VPPA has never been stretched to cover movie theaters selling tickets in any jurisdiction.

Stated simply, Plaintiffs have not met their burden to sufficiently allege either that Reading is a "video tape service provider" or that Plaintiffs are "consumers" vis-à-vis Reading (i.e., renters, purchasers, or subscribers) under the VPPA. For these reasons, Reading respectfully requests the Court dismiss Plaintiffs' VPPA claim.

**B. Plaintiffs' California Claim Should be Dismissed for Lack of Federal Subject Matter Jurisdiction and Failure to State a Claim**

Plaintiffs' claim under section 1799.3 of the California Civil Code fails for two straightforward reasons. First, and for the same reasons that Plaintiffs' VPPA claim fails, section 1799.3 simply does not apply to Reading as a movie theater website. *See Garza*, 2024 WL 1171737 at *1 ("Garza's claim under section 1799.3 of the California Civil Code is dismissed. A movie theater operator like Alamo does not provide 'video recording sales or rental services' because, as Garza acknowledges, Alamo neither sells nor rents movies to people who visit its theaters."). Second, the dismissal of the VPPA claim removes the only alleged basis for this Court's jurisdiction. *See Hallstrom*, 844 F.2d at 601 ("Without federal jurisdiction, a federal court has no power to hear state claims."); *see also Middleton v. Wells Fargo, N.A.*, No. 2:15-cv-01875-LDG-PAL, 2017 WL 3698783, at *4 (D. Nev. Aug. 18, 2017) ("Because the amended complaint fails to state an actionable federal claim, the court necessarily cannot exercise supplemental jurisdiction over her state-law claims.").

For these reasons, Reading respectfully requests the Court dismiss Plaintiffs' California claim.

**C. In the Alternative, Plaintiffs' Proposed Classes Must be Stricken**

In the alternative to complete dismissal of Plaintiffs' claims, Plaintiffs' proposed VPPA and California classes must be dismissed or stricken because they cannot be pursued as a matter of law. Plaintiffs seek to represent the following nationwide classes:

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

a) The Movie Ticket Class: All persons in the United States (i) who purchased one or more movie tickets from Defendant's websites, and (ii) who were members of Facebook at the time they purchased the movie tickets.

b) The Subscriber Video Class: All persons in the United States (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed the video clips, and (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant.

c) The Movie Ticket and Video Class: All persons in the United States (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed video clips, and (iii) who purchased one or more movie tickets from Defendant's websites.

Compl. ¶ 56. Plaintiff Butler also seeks to represent the following California subclasses:

a) The Movie Ticket California Subclass: All persons in the [sic] California (i) who purchased one or more movie tickets from Defendant's website, and (ii) who were members of Facebook at the time they purchased the movie tickets.

b) The Subscriber Video California Subclass: All persons in California (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed the video clips, and (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant.

c) The Movie Ticket and Video Subclass: All persons in the [sic] California (i) who viewed video clips on Defendant's websites, (ii) who were members of Facebook at the time they viewed video clips, and (iii) who purchased one or more movie tickets from Defendant's websites.

*Id.* ¶ 57.

*1. All proposed classes are overbroad and not ascertainable.*

As an initial matter, all of the proposed classes are facially overbroad and not ascertainable because any class must be limited to individuals that <u>actually had PII disclosed</u>—not just who



Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

visited Reading's website or purchased a movie ticket. But the threshold element of disclosure is tellingly absent from the proposed class definitions. And even assuming this disclosure factor was included as an element, , courts have found that such an inquiry "turns on whether the c_user cookie was sent to Facebook, ***which depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)***" that are not capable of class-wide resolution. *See In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2014 WL 2758598, at *14-15 (N.D. Cal. Jun. 17, 2014) (emphasis added) (noting that even if far narrower class definitions could be proposed, the question remains "how does one ascertain who is in the class or subclasses," and the only answer would be through the inherently individualized and untrustworthy process of "self-reporting"); *see also Ratnayake v. Farmers Ins. Exch.*, No. 2:11-cv-01668-APG-CWH, 2015 WL 875432, at *4 (D. Nev. Feb. 27, 2015) ("A class may not be ascertainable if [the court] must make detailed fact determinations to determine whether someone is a member of the class."). For this reason, Reading respectfully requests the Court dismiss or strike all class allegations in the complaint.

*2. Proposed classes consisting of movie ticket purchasers are not pursuable.*

Even if some classes could conceivably be pursued—and they cannot as currently defined—the Court must strike the proposed "movie ticket" classes because those claims must be dismissed pursuant to *Garza*, as explained above. *See* Compl. ¶ 56(a), (c); *id.* ¶ 57(a), (c). Indeed, courts regularly recognize that a class cannot consist of persons who lack claims. *See, e.g.*, *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) ("Because the proposed class includes many members who have not been injured, it is not certifiable."). For this reason, and as an alternative to complete dismissal, as stated above, or complete striking of all class allegations, Reading respectfully requests the Court strike the proposed nationwide and California "Movie Ticket" and "Movie Ticket and Video" Classes.

/ / /

## V. CONCLUSION

For the reasons stated herein, Reading respectfully requests the Court dismiss the Complaint in its entirety, or, in the alternative, strike the class allegations.

DATED this 1st day of April, 2024

**GREENBERG TRAURIG, LLP**

By: */s/ Tyler Andrews*
Mark E. Ferrario, Esq.
Nevada Bar. No. 1625
Tyler Andrews, Esq.
Nevada Bar No. 9499
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Reading International, Inc.*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that, a true and correct copy of the foregoing ***Defendant's Motion to Dismiss or, in the Alternative, to Strike Class Allegations*** was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

DATED this 1st day of April 2024.

*<u>/s/ Andrea Lee Rosehill</u>*
An employee of GREENBERG TRAURIG, LLP