Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
EGLET ADAMS EGLET HAM HENRIOD
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

Anthony G. Simon (admitted pro hac vice)
Jeremiah W. Nixon (admitted pro hac vice)
THE SIMON LAW FIRM, P.C.
800Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

*Attorneys for Plaintiffs and the Classes*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No. 2:24-cv-00255-RFB-MDC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

**ORAL ARGUMENT REQUESTED**

**INTRODUCTION**

If a business provides prerecorded video goods or services, then it cannot disclose information identifying its consumers' video choices. Congress enacted the Video Privacy Protection Act ("VPPA") to codify this broad, substantive right to privacy by prohibiting the disclosure of "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710. The Court should reject Defendant's attempt to avoid liability for its actions; Defendant argues that it is not subject to the VPPA by compartmentalizing statutory sections and isolating language. But accountability is mandated by the statute, because Reading International, Inc. ("Reading Cinemas") is a video provider that has implemented an invasive information-tracking practice. By adding the Facebook Pixel to its websites' code, Reading Cinemas collects and shares information identifying the movies for which individual Facebook users purchased tickets and the videos they watched on Reading Cinemas' websites. Defendant's conduct is a violation of the VPPA.

Reading Cinemas is a Provider—it provides audio-visual services to consumers. Courts recognize that a defendant is a provider if it is "substantially involved in the conveyance of video content to consumers" and its business is "significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). As a Provider, Reading Cinemas' conduct is governed by the VPPA. In the complaint, Plaintiffs allege that Reading Cinemas violates the VPPA in two primary ways: first, it discloses online movie ticket purchases to Facebook, and second, it discloses the videos that individual consumers watch on Reading Cinemas' websites to Facebook. Likewise, Plaintiffs and class members are consumers. They purchase video services from Defendant and subscribe to Defendant's business offerings by maintaining user accounts with Reading Cinemas.

Defendant's reliance on *Garza v. Alamo Intermediate II Holdings, LLC* is overstated.

(Doc. 11[1] at 2-3, 5-7, 9). Many of Defendant's remaining arguments are houses of cards—contingent on this Court following the flawed *Garza* decision currently on appeal.[2] Relatedly, the Court should reject Defendant's motion to strike class allegations as premature.

Plaintiffs have sufficiently alleged viable privacy violations under the VPPA and California Civil Code § 1799.3, and this case should proceed on the merits. Reading Cinemas' motion should be denied.

## LEGAL STANDARD

### A. Motion to Dismiss

This Court should accept as true all of Plaintiffs' well-pleaded allegations and draw all reasonable inferences in their favor. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Ninth Circuit has explained that for a complaint to survive dismissal, the plaintiffs' allegations, and reasonable inferences drawn therefrom, must merely be "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). A motion to dismiss should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000). Additionally, if the Court were to entertain dismissal, Plaintiffs should be given an opportunity to amend their complaint to cure any defect. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) ("The standard for granting leave to amend is generous.").

### B. Motion to Strike Class Allegations

A motion to strike under Rule 12(f) is "an extreme and drastic remedy that is heavily disfavored." *Woodburn v. City of Henderson*, No. 2:19-cv-01488, 2020 WL 5805503, at *3 (D.

---

[1] It appears that Defendant filed two identical copies of its "motion to dismiss or, in the alternative, to strike class allegations" at ECF Doc. Nos. 11 and 12. For simplicity, Plaintiffs will cite to Doc. 11 in this Response.

[2] *See* United States Court of Appeals for the Ninth Circuit, Docket No. 24-2165.

Nev. Sept. 29, 2020) (internal quotations omitted). A motion to strike class allegations is generally premature and unnecessary until after the defendant files an answer to the complaint, the parties conduct discovery, and the plaintiffs file a motion for class certification. *Id.* at *4. Rule 12(f) does permit a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike class allegations are "disfavored because a motion for class certification is considered to be a more appropriate vehicle for arguments pertaining to the class allegations." *John v. Mazo*, No. 2:16-cv-00239, 2016 WL 4497755, at *2 (D. Nev. Aug. 25, 2016); *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007) ("Generally, courts review class allegations through a motion for class certification.").

## RELEVANT FACTUAL ALLEGATIONS

Reading Cinemas owns and operates movie theaters and related websites. Compl. ¶¶ 2, 11, 41. Defendant is in the business of delivering video content to consumers; it does so in its theaters and on its websites. *Id.* ¶ 42. Reading Cinemas installed code on its websites referred to as the Facebook Pixel. *Id.* ¶¶ 44-53. The Facebook Pixel is unnecessary for the regular operation of Defendant's websites. *Id.* ¶ 46. Defendant made an affirmative choice to install this code on its website to enable the collection and disclosure of its consumers' information. *Id.* ¶¶ 73, 79. The Facebook Pixel enables Defendant to collect and disclose data on consumers' video choices. *Id.* ¶ 48. When an individual with a Facebook account purchases movie tickets or watches videos on Reading Cinemas' websites, the Facebook Pixel simultaneously discloses the name of the audio-visual materials requested and the individual's Facebook ID ("FID"). *Id.* ¶¶ 48-53. The information disclosing the consumer's identity, along with the specific video materials requested, is disclosed in a single communication. *Id.* Each Facebook user has a unique FID that permits anyone to easily locate their identity by appending the FID to the end of "Facebook.com/." *Id.* ¶¶ 31-32. Facebook is a "real identity platform" where users are only allowed one account and must share their name and other identifying information. *Id.* ¶ 33. Plaintiffs and all members of the classes are Facebook users who are readily identifiable via their FIDs. *Id.* ¶ 35.

When Plaintiffs and class members purchased movie tickets and watched movie trailers on Reading Cinemas' websites, their video choices were disclosed to third-party Facebook via the Pixel. *Id.* ¶¶ 43-53, 73, 79. Plaintiffs and class members did not authorize Reading Cinemas to disclose their personally identifiable information to third parties under the VPPA. *Id.* ¶¶ 47, 74, 81.

**ARGUMENT**

**A. Reading Cinemas is a Provider, and Plaintiffs are Consumers under the VPPA**

Defendant correctly cites *Mollett v. Netflix, Inc.* for the elements of a VPPA claim. (Doc. 11 at 5); 795 F.3d 1062, 1066 (9th Cir. 2015) ("a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized."). Defendant's motion to dismiss does not challenge the fact that Plaintiffs satisfied elements (3) and (4) above. Instead, Defendant merely argues that element (1) is not satisfied because Reading Cinemas is not a video tape service provider ("Provider"), and Defendant also makes a partial challenge to element (2) by arguing that Plaintiffs are not "Consumers." (Doc. 11 at 5-7). An accurate reading of the allegations in the Complaint, the statute, and the relevant caselaw, should compel this court to reject Defendant's motion to dismiss in its entirety.

**(1) *This Court should not follow Garza v. Alamo Intermediate II Holding LLC.***

Defendant relies heavily on the Northern District of California's decision in *Garza v. Alamo Intermediate II Holdings, LLC*. (Doc. 11 at 2-3, 5-7, 9). The California District Court's single-page decision granting a motion to dismiss is fundamentally flawed, currently on appeal,[3] and is not binding on this Court. *See Kiessling v. Rader*, No. 2:16-CV-0690-GMN-NJK, 2018 WL 1401972, at *4 (D. Nev. Mar. 20, 2018) ("A decision of a federal district court judge is not

[3] *See* United States Court of Appeals for the Ninth Circuit, Docket No. 24-2165.

binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting *Camreta v Greene*, 563 U.S. 692, 709 n.7 (2011)). This Court should rule based on the allegations in the complaint as applied to the statute.

Additionally, *Garza* did not involve the other basis for liability here—the disclosure of personally identifiable information about consumers watching movie trailers on Reading Cinemas' websites. *See* Compl. ¶¶ 2, 11, 42-43, 48, 51-53, 69. The allegations in *Garza* were limited to movie ticket purchases, so Plaintiffs' allegations concerning the disclosure of videos watched on Defendant's website are beyond the scope of that decision. *See id*. The flawed *Garza* order that is currently on appeal does not dictate the outcome of this case.

**(2) *Reading Cinemas is a Provider under the VPPA*.**

Plaintiffs allege that Reading Cinemas is engaged in the business of delivering prerecorded videos to consumers; therefore, Reading Cinemas is a Provider subject to the VPPA. 18 U.S.C. § 2710; Compl. ¶¶ 2, 11, 69. The VPPA defines a Provider as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Reading Cinemas' primary business is delivering movies to consumers in theaters and showing movie trailers on its website. Compl. ¶ 11.

Congress enacted the VPPA to empower individuals "to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8 (1988). Moreover, and "[c]onsistent with Congress's purpose, the statute's language is broad." *Mollett*, 795 F.3d at 1066. The VPPA prohibits Providers from disclosing Personally Identifiable Information, defined as "information which identifies a person as having requested or obtained specific video materials or services" from a Provider. 18 U.S.C. § 2710(a)(3).

Reading Cinemas is a Provider under the plain language of the statute, and statutory construction begins with the ordinary meaning of words employed by Congress. *See, e.g.*, *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021). The statute's definition of Provider focuses on a defendant's business conduct. *See* 18 U.S.C. § 2710. Courts that have analyzed the VPPA

language recognize that a defendant is a Provider if it is "substantially involved in the conveyance of video content to consumers" and its business is "significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see also Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 852 (N.D. Cal. 2022). Congress intentionally employed broad language so the VPPA would continue to protect privacy interests even when video formats changed, and new business models emerged. *See In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) ("Congress was concerned with protecting the confidentiality of private information about viewing preferences regardless of the business model or media format involved."). Further, Congress specifically identified "open-reel movies" as an example of "similar audio visual materials." S. Rep. No. 100-599 at 12; *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *5. Open-reel was the delivery mechanism used for movie theaters when Congress enacted the VPPA. Open-reel and modern digital projection technology both qualify as "audio visual materials" under the plain language of the VPPA. 18 U.S.C. § 2710(a)(4).

Liability under the VPPA attaches when a consumer *requests or obtains* specific video *materials or services*. 18 U.S.C. § 2710(a)(3). This is how Congress decided to protect intellectual privacy in video choices when considering "the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store . . .." S. Rep. No. 100-599, at 5-6. For online movie ticket purchases the relevant point of inquiry in a VPPA claim is when the consumer *requests or obtains* video services, i.e., when the tickets are purchased as opposed to when an individual goes to the theater to watch a movie. 18 U.S.C. § 2710(a)(3). The decision to attach liability to the transaction instead of the act reflects practical considerations of Congress in enacting an enforceable statute and it traces back to Judge Robert Bork and the origin of the VPPA. *See* S. Rep. No. 100-599, at 4.

The origin of the legislation highlights Congress's broad concern for intellectual privacy in the videos we watch. The impetus of the VPPA was the publication of video rental records of then-Supreme Court nominee Robert Bork's family. S. Rep. No. 100-599 at 5; Compl. ¶¶ 15-22.

Congress chose not to limit the VPPA to physical videotapes; Congress instead enacted a much more expansive law that enables consumers to seek redress when a company knowingly discloses information identifying their video choices to others without their consent. *See Mollett*, 795 F.3d at 1065-66. "The Act allows consumers to maintain control over personal information divulged and generated in exchange for receiving services from" Providers. *Id.* at 1065. Congress's concern was not that individuals who were also in the video store might see what movies Judge Bork was checking out; instead, the VPPA is directed to prevent the pervasive surveillance of consumer transactions. *See In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014)[4] ("[T]he trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance.") (citing S. Rep. No. 100-599, at 7).[5] The VPPA protects this substantive privacy interest by attaching to businesses engaged in providing audiovisual goods and services.

The VPPA's definition of Provider focuses on the nature of the defendant's business. *See Hernandez v. Container Store, Inc.*, No. 2:23-cv-05067, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024). As the name suggests, Reading Cinemas' "particular field of endeavor" and the "focus of [Reading Cinemas'] work" is the movie business. *Hernandez v. Container Store, Inc.*, No. 2:23-cv-05067, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024) (citation omitted); Compl. ¶ 11. Defendant's business is movies, so Defendant is a Provider under the VPPA.

**(3) *Plaintiffs are Consumers.***

When Plaintiffs purchased movie tickets, they purchased goods or services from a

---

[4] In a footnote, Defendant notes that a court granted Hulu's motion for summary judgment in this case. (Doc. 11 at 6 n.2). However, the Court granted summary judgment in *In re Hulu* for reasons that are not before the Court in the present case. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015). More importantly, *In re Hulu* illustrates why the case must proceed to the merits. *See In re Hulu Priv. Litig.*, 2012 WL 3282960 (denying Hulu's motion to dismiss). The facts in Hulu's case involved Facebook's "Like" button while the present case involves a separate and distinct technology: the Facebook Pixel. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1093-94 (N.D. Cal. 2015).

[5] Privacy is not binary. "Privacy is the degree to which human information is neither known nor used." Neil Richards, Why Privacy Matters 22 (2022).

Provider. Likewise, those with Reading Cinemas user accounts subscribe to goods or services from a Provider. The VPPA broadly protects consumers. 18 U.S.C. § 2710(a)(1). Under the VPPA "the term 'consumer' means any renter, purchaser, or subscriber of goods or services" from a Provider. 18 U.S.C. § 2710(a)(1). In this case, there are two ways that Plaintiffs and class members qualify as consumers: (1) by purchasing movie tickets on Reading Cinemas' websites, and/or (2) by providing Reading Cinemas with personal information to sign up for a user account. Compl. ¶¶ 9-10, 37-40, 66-80. The ways in which an individual may qualify as a consumer under the VPPA are illustrated in the table below.

Table 1:

| **Consumer Category 1** | **Consumer Category 2** | **Consumer Category 3** |
| --- | --- | --- |
| Individuals who purchased a movie ticket on Defendant's websites | Individuals who purchased a movie ticket and signed up for a user account | Individuals who signed up for a user account with Defendant |
| Qualify as a consumer because they are a purchaser | Qualify as a consumer because they are a purchaser and a subscriber | Qualify as a consumer because they are a subscriber |

Plaintiffs and class members who purchased movie tickets are purchasers under the VPPA. Put simply: they purchased goods or services from a Provider. Compl. ¶¶ 9-10. Defendant argues that Plaintiffs are not purchasers because "the only thing they can even claim to have purchased were movie ***tickets***, not cassette tapes or 'similar audio-visual materials.'" (Doc. 11 at 6) (emphasis in original). But this is precisely what the VPPA protects and illustrates why Congress decided that VPPA liability attaches at the time of "request." *See Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 n.3 (N.D. Ga. 2023) ("To the extent that Defendant argues the VPPA requires Plaintiff actually watch the videos, the court rejects that argument. . . . The plain text of the VPPA regulates the disclosure of information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.")

(internal quotation omitted). When Plaintiffs purchase a movie ticket online, they request specific video content, and VPPA privacy protections apply to that transaction. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("the definition [of Provider] is medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format."). Movies are certainly within the purview of the statute. When Plaintiffs purchase movie tickets, they are consumers who are making a paid request for Reading Cinemas' audio-visual services.

Additionally, Plaintiff Valentini and others who signed up for accounts with Defendant are "subscribers" under the VPPA. Compl. ¶¶ 9, 37-40. These subscribers provide Defendant with valuable personal information, including their name, email, birthdate, and location in exchange for weekly newsletters, special offers, enhanced access to movie tickets, special events, discounts, and free movie screenings. *Id.* at ¶ 37-39. There is no monetary payment requirement to qualify as a subscriber under the VPPA. *See Rancourt v. Meredith Corp.*, No. 22-CV-10696-ADB, 2024 WL 381344, at *13 (D. Mass. Feb. 1, 2024); *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *8 ("[W]hile the terms 'renter' and 'buyer' necessarily imply payment of money, the term 'subscriber' does not."). The relationship between those with user accounts and Reading Cinemas evinces a commitment or relationship. *See* Compl. ¶¶ 37-40; *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (holding that a plaintiff qualifies as a subscriber when they have created an account, received a free newsletter, and received access to special benefits).

Defendant argues that for Plaintiffs to qualify as subscribers, they must subscribe to a specific video service. (Doc. 11 at 6-7). But the VPPA does not conflate these two issues. The question is more straightforward: do individuals with Reading Cinemas user accounts subscribe to "goods or services" from a Provider? *See Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022). In *Lebakken*, the Court held that subscribing to WebMD's e-newsletter qualified individuals as subscribers under the VPPA, even if the videos consumers watched on WebMD's website were separate from the newsletter. *Id.* Moreover, individuals with Reading

Cinemas user accounts subscribe to goods and services related to video because Reading Cinemas' business revolves around video; it operates movie theaters and websites centered around watching movies. Compl. ¶ 11. In exchange for personal information, Reading Cinemas gives its subscribers access to video-related goods and services, including special access to movie tickets, newsletters about movies, and free movie screenings, among other special benefits. Compl. ¶¶ 37-40. Individuals without user accounts do not receive these subscriber benefits. This exchange and ongoing relationship qualifies those with user accounts as "subscribers" under the VPPA. *See e.g., Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016). Whether through purchasing tickets, maintaining user accounts, or both, Plaintiffs and class members are consumers under the VPPA.

**B. Plaintiffs include valid claims under Section 1799.3 of the California Civil Code.**

Defenant's arguments that Plaintiffs' claims under Section 1799.3 of the California Civil Code should be dismissed are contingent on the Court agreeing with Defendant that these privacy laws do not cover Reading Cinemas. (Doc. 11 at 7). For the reasons stated above, Reading Cinemas is a Provider of video services that is prohibited from disclosing personal information that exposes individuals' video choices to third parties without express written consent. Similarly, because Plaintiffs have alleged valid VPPA claims, this court has jurisdiction over this case in its entirety. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988). Reading Cinemas is bound by VPPA, so it is bound by Section 1799.3 of the California Civil Code as well.

**C. Defendant's motion to strike is premature.**

Plaintiffs intend to file a motion for class certification "as soon as practicable" after Defendant answers the complaint. Fed. R. Civ. P. 23(c)(1). Compared to a motion to strike, "class certification is a more appropriate vehicle for testing the suitability of class treatment." *Layton v. Specialized Loan Servicing, LLC*, No. 2:20-cv-01225, 2022 WL 1084753, at *1 (D. Nev. Mar. 28, 2022). Nevada district courts have categorized Rule 12(f) motions as "extreme and drastic" and "heavily disfavored." *Woodburn v. City of Henderson*, No. 2:19-cv-01488, 2020 WL 5805503, at

*3 (D. Nev. Sept. 29, 2020); Fed. R. Civ. P. 12(f). Reading Cinemas' motion to strike also attempts to inject matter outside the pleadings to support its arguments. (Doc. 11 at 9). This is not permitted in a Rule 12(f) motion to strike. *In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693, 2017 WL 11420284, at *7 (C.D. Cal. July 25, 2017).

In its argument, Defendant failed to cite any caselaw supporting a motion to strike class allegations at this stage. *See* (Doc. 11 at 7-9). The decisions cited by Reading Cinemas are district court orders analyzing pending motions for class certification. *See id.* For example, Defendant cites a court order on class certification from *In re Hulu*—a case where there was extensive discovery conducted on the technical functions of Facebook's "Like" button on Hulu's website. *See id.*; *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014). Without this sort of discovery and a motion for class certification on file, it would be premature to strike class allegations at this time.

Defendant also argues that the class of movie ticket purchasers should be stricken because they do not have valid claims under the VPPA. (Doc. 11 at 9). This argument is merely a recitation of Defendant's arguments under the motion to dismiss heading. (Doc. 11 at 5-7). It is tautological to say that a class cannot be maintained if the underlying claims are invalid. So, because website movie ticket purchasers have valid claims for the reasons discussed above, Defendant's motion to strike the related classes also fails. Before engaging on the merits of Defendant's arguments on the appropriateness of class certification, the motion to strike should be denied as premature.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Reading Cinemas' motion in its entirety. Alternatively, if the Court finds that Plaintiffs have not met their threshold as to any of the claims in the complaint, Plaintiffs ask that they be permitted to amend the complaint.

Dated: April 15, 2024

Respectfully submitted,

*/s/ Jeremiah W. Nixon*
Anthony G. Simon (admitted pro hac vice)
Jeremiah W. Nixon (admitted pro hac vice)
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
**EGLET ADAMS EGLET HAM HENRIOD**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

*Attorneys for Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that I caused true and correct copies of the foregoing document to be served upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system on this 15th day of April 2024.

*/s/ Jeremiah W. Nixon*
**THE SIMON LAW FIRM, P.C.**