Anthony G. Simon (pro hac vice)
Jeremiah W. Nixon (pro hac vice)
THE SIMON LAW FIRM, P.C.
800Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
EGLET ADAMS EGLET HAM HENRIOD
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

*Attorneys for Plaintiffs and the Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>READING INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 2:24-cv-00255-RFB-MDC<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**HEARING REQUESTED** |

**NOTICE OF MOTION AND MOTION**

Plaintiffs Daniel Valentini and Dallace Butler, individually and on behalf of all others similarly situated, move the Court for an order certifying this action as a class action and appointing class counsel, pursuant to Fed. R. Civ. P. 23. Specifically, Plaintiffs move for an order certifying the following classes:

> **Movie Ticket Class**: All persons in the United States (i) who purchased one or more movie tickets from Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they purchased the movie tickets, and (iii), whose personal video request information Reading Cinemas disclosed to Meta.

> **Subscriber Video Class**: All persons in the United States (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed the video clips, (iii) who had previously signed up for

an account with one or more of Defendant's websites and agreed to receive emails from Defendant, and (iv) whose personal video viewing information Reading Cinemas disclosed to Meta.

**Ticket and Video Class**: All persons in the United States (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed video clips, (iii) who purchased one or more movie tickets from Defendant's websites; and (iv) whose personal video viewing or request information Reading Cinemas disclosed to Meta.

Plaintiff Butler also seeks to represent the following proposed California Sub-Classes:

**Movie Ticket California Subclass**: All persons in California (i) who purchased one or more movie tickets from Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they purchased the movie tickets, and (iii) whose personal video request information Reading Cinemas disclosed to Meta.

**Subscriber Video California Subclass**: All persons in California (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed the video clips, (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant, and (iv) whose personal video viewing information Reading Cinemas disclosed to Meta.

**Ticket and Video California Subclass**: All persons in California (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed video clips, (iii) who purchased one or more movie tickets from Defendant's websites, and (iv) whose personal video viewing or request information Reading Cinemas disclosed to Meta.[1]

This Motion is based on the pleadings and papers on file in this action, this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the attached Exhibits, all matters upon which judicial notice may be taken, and whatever evidence and argument may be presented to the Court.

---

[1] These proposed class definitions differ from the definitions in the initial complaint in that they are narrower as date ranges are added to define the class period, and language is added to clarify disclosure.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arises from Reading International, Inc.'s ("Reading Cinemas") systematic violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, through its intentional use of website code—the Facebook Pixel[2] —that surreptitiously disclosed consumers' private video-viewing information to Meta Platforms, Inc. Plaintiffs also allege parallel violations of California Civil Code § 1799.3 for California residents. This litigation involves a uniform business practice, making it ideally suited for class treatment.

At the core of this case is Reading Cinemas' decision to install the Facebook Pixel on its websites, a tool designed to track and transmit users' video-viewing activity—such as movie trailer views and ticket purchases—directly to Meta. Plaintiffs allege that this conduct, which affected all consumers visiting Reading Cinemas' websites, violates the VPPA's clear prohibition against disclosing personally identifiable information without proper consent. These violations occurred as part of a systematic company practice, uniformly applied to all website visitors, resulting in a common harm that affects the entire class.

The central legal issue driving this litigation is whether Reading Cinemas' installation of the Facebook Pixel and subsequent transmission of consumer data to Meta violated class members' privacy rights under the VPPA. The answer to this question will be based on common proof and will resolve the claims of all class members in one stroke. As the Ninth Circuit has emphasized, class certification is appropriate when there are common issues "apt to drive the resolution of the litigation." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024) (quoting *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)). As is usually the case in class actions, there may be some individualized issues, but such variations do not change the fact that Reading Cinemas' uniform conduct is the focal point of this case. Liability

---

[2] The company that owns Facebook rebranded as Meta Platforms, Inc. ("Meta") in 2021. Thus, this piece of code is sometimes referred to interchangeably as the "Facebook Pixel" or the "Meta Pixel." Facebook is a Meta-owned, distinct social media platform relevant to this case because it is the platform by which Plaintiffs and class members are identified. For simplicity and consistency, Plaintiffs refer to the code at issue as the "Facebook Pixel."

arises from a common practice of Reading Cinemas'—the use of the Facebook Pixel on its websites. Should Plaintiffs prevail on the merits, class administration will be determined based on an objective set of criteria.

Plaintiffs request that this Court grant class certification so they can hold Reading Cinemas accountable for its privacy violations on behalf of all affected individuals.

## II. THE STATUTORY VIOLATIONS ALLEGED

### A. Video Privacy Protection Act

Plaintiffs allege violations of the Video Privacy Protection Act ("VPPA") and, for a subclass, violations of California Civil Code § 1799.3. ECF No. 1, ¶¶ 3-8, 66-80. Congress passed the VPPA to protect personal privacy after a list of films rented by Judge Robert Bork and his family became public. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *see also Salazar v. Nat'l Basketball Ass'n*, No. 23-1147, 2024 WL 4487971, at *9 (2d Cir. Oct. 15, 2024). The Act "reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Salazar*, 2024 WL 4487971, at *9 (quoting S. Rep. No. 100-599, at 8). The VPPA protects consumers' substantive right to privacy by prohibiting the disclosure of "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710. Here, that includes the purchase of movie tickets and watching videos online.

The key to determining Reading Cinemas' liability to the putative class hinges on whether certain actions constitute a violation of the statutes. For a VPPA violation, the elements of a valid claim include that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any [consumer]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015); 18 U.S.C. § 2710. The outcome of this litigation turns on whether Reading Cinemas and its uniform conduct satisfy these elements.

### B. California Civil Code § 1799.3

Likewise, California Civil Code § 1799.3, is a closely analogous California statute that provides "[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3. For class certification in this case, the predominant common issues are the same as those with the VPPA.

## III. BACKGROUND

### A. Consumers buy movie tickets and watch videos on Reading Cinemas' websites.

Reading Cinemas owns and operates movie theaters and related websites. ECF No. 1, ¶¶ 2, 11, 41. Defendant is in the business of delivering video content to consumers; it does so in its theaters and on its websites. *Id.* ¶ 42. In its theaters, Reading provides video services—it exhibits movies. *Id.* As has become commonplace in recent years, consumers can buy movie tickets online. Ex. A, Reading Dep. 29:8-30:4, On its website, consumers can watch movie trailers and other videos. ECF No. 1, ¶ 42; Ex. A, Reading Dep. 51:1-3.

When class members purchase a movie ticket online, they request specific video materials or services, and VPPA privacy protections apply to that transaction. 18 U.S.C. § 2710(a)(3). Likewise, Reading Cinemas' is engaged in the business of audio visual materials—it is a movie theater chain, so videos are at the core of its business. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("the definition [of Provider] is medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format."). Movies and movie trailers are certainly within the purview of the statute. When Plaintiffs purchase movie tickets, they are consumers who receive VPPA protection.

**B. Reading Cinemas also encourages consumers to become subscribers by creating user accounts.**

When an individual signs up for a user account and newsletter through Reading Cinemas' websites, they exchange personal information in return for the account's ongoing privileges and email newsletters. ECF No. 1, ¶ 37-40. At no point during the user registration process do consumers provide Reading Cinemas with VPPA-compliant consent that would permit Defendant to share personal viewing information with third parties. *Id.* ¶ 40.

**C. Reading Cinemas installed a tracking pixel on its websites and transmits consumer data to Meta.**

Sometime in "approximately 2018," Reading Cinemas installed the Facebook Pixel on its websites. Ex. A, Reading Dep. 32:19-24. The Facebook Pixel is unnecessary for the regular operation of Defendant's websites as it is purely a marketing tool. ECF No. 1, ¶ 46; Ex. A, Reading Dep. 34:12-15. The Facebook Pixel is a piece of code that companies can add to their web pages to collect data regarding consumer activity and automatically transmit that data to Meta. *See* Get Started, Meta Pixel, https://developers.facebook.com/docs/meta-pixel/get-started (last visited Oct. 17, 2024), screen capture attached as Exhibit B.

Defendant made an affirmative choice to install this code on its website to enable the collection and disclosure of its consumers' information. *Id.* ¶¶ 73, 79; Ex. A, Reading Dep. 35:20-22. The Facebook Pixel enables Defendant to collect and disclose data on consumers' video choices. ECF No. 1, ¶ 48. When an individual with a Facebook account purchases movie tickets or watches videos on Reading Cinemas' websites, the Facebook Pixel simultaneously discloses the name of the audio-visual materials requested and the individual's Facebook ID ("FID"). *Id.* ¶¶ 48-53; Ex. A, Reading Dep. 64:2-7. Reading Cinemas transmits information including the consumer's identity along with the specific video materials requested in a single communication. ECF No. 1, ¶¶ 48-53.

Each Facebook user has a unique FID that permits anyone to easily locate their identity by appending the FID to the end of "Facebook.com/." *Id.* ¶¶ 31-32. Facebook is a "real identity

platform" where users are only allowed one account and must share their name and other identifying information. *Id.* ¶ 33. Plaintiffs and all members of the classes are Facebook users who are readily identifiable via their FIDs. *Id.* ¶ 35.

Meta warns companies installing the Facebook Pixel on their websites that the Pixel is a personal identifier because it enables Meta "to match your website visitors to their respective Facebook User accounts." *See* Ex. B, Get Started, Meta Pixel. Reading Cinemas' configuration of the Facebook Pixel transmitted[3] data to Meta that personally identified individual consumers (consumers' FIDs), as well as the video material or services that they purchased, requested, or viewed on Defendants' websites. ECF No. 1, ¶¶ 41-55. Reading Cinemas' use and configuration of the Facebook Pixel was a consistent company practice. Ex. A, Reading Dep. 33:5-14.

### D. Consumers did not authorize the disclosure of their personally identifiable information to Meta.

When Plaintiffs and class members purchased movie tickets and watched movie trailers on Reading Cinemas' websites, their video choices were disclosed to third-party Facebook via the Pixel. ECF No. 1, ¶¶ 43-53, 73, 79. Plaintiffs and class members did not authorize Reading Cinemas to disclose their personally identifiable information to third parties under the VPPA. *Id.* ¶¶ 47, 74, 80. The VPPA has a unique consent requirement, whereby, to disclose personally identifiable information to a third party, a company must obtain informed, written consent in "a form distinct and separate from any form setting for forth other legal or financial obligations of the consumer" and at the time the disclosure is sought or for a set period of time with withdrawal of consent as an always-present option. 18 U.S.C. § 2710(b)(2). At no point did Reading Cinemas get such consent from plaintiffs or the class members. ECF No. 1, ¶¶ 47, 74, 80.

## IV. LEGAL STANDARD

A party seeking to certify a class under Rule 23 must show that they have satisfied each of the four requirements of Rule 23(a) and at least one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23. Under Rule 23(a), "one or more members of a class may sue or be sued as

[3] The past tense is used because Reading Cinemas deactivated the Facebook Pixel on their websites in approximately June of 2024. Ex. A, Reading Dep. 33:5-14.

representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Further, for a class seeking damages under Rule 23(b)(3), as is the case here, a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The burden is on Plaintiffs to demonstrate that the Rule 23 requirements are met, but at the certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage." *Id*. Further, the Federal Rules of Evidence are not strictly applied at the certification stage, and plaintiffs may support class certification with evidence that may not be in an admissible form. *See Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024).

## V. PROPOSED CLASSES

Plaintiffs seek certification of the following classes under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

> **Movie Ticket Class**: All persons in the United States (i) who purchased one or more movie tickets from Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they purchased the movie tickets, and (iii), whose personal video request information Reading Cinemas disclosed to Meta.

> **Subscriber Video Class**: All persons in the United States (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed the video clips, (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant, and (iv) whose personal video viewing information Reading Cinemas disclosed to Meta.

> **Ticket and Video Class**: All persons in the United States (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of

Facebook at the time they viewed video clips, (iii) who purchased one or more movie tickets from Defendant's websites; and (iv) whose personal video viewing or request information Reading Cinemas disclosed to Meta.

Plaintiff Butler also seeks to represent the following proposed California Sub-Classes:

**Movie Ticket California Subclass**: All persons in California (i) who purchased one or more movie tickets from Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they purchased the movie tickets, and (iii) whose personal video request information Reading Cinemas disclosed to Meta.

**Subscriber Video California Subclass**: All persons in California (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed the video clips, (iii) who had previously signed up for an account with one or more of Defendant's websites and agreed to receive emails from Defendant, and (iv) whose personal video viewing information Reading Cinemas disclosed to Meta.

**Ticket and Video California Subclass**: All persons in California (i) who viewed video clips on Defendant's websites from February 6, 2022, until present, (ii) who were members of Facebook at the time they viewed video clips, (iii) who purchased one or more movie tickets from Defendant's websites, and (iv) whose personal video viewing or request information Reading Cinemas disclosed to Meta.

The proposed class definitions provide clear, objective criteria for determining class membership.

## VI. ARGUMENT

### A. This case satisfies all of the requirements of Rule 23(a).

#### 1. *The numerosity requirement is easily satisfied.*

There is no magic number for satisfying the numerosity requirement, but "[g]enerally, courts have held that numerosity is satisfied when the class size exceeds forty members." *Tyus v. Wendy's of Las Vegas, Inc.*, 407 F. Supp. 3d 1088, 1097 (D. Nev. 2019). To meet this requirement, Plaintiffs "need not state exact figures; instead, they can satisfy the numerosity requirement by providing reasonable estimates." *Id.* (citation omitted).

"In analyzing numerosity a court may make common-sense assumptions and reasonable inferences." *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (internal quotation omitted). In *West,* the court further found that even if the plaintiffs' estimates overstated the actual class member count "by a factor of one thousand, the putative class would

still contain more than sixty members which gives rise to a presumption of impracticability of joinder based on numbers alone" *Id.* (cleaned up).

Reading Cinemas has approximately 198 screens in the United States where they show movies to paying consumers. *See* Reading International, Inc. Form 10-Q for the quarterly period ended March 31, 2024, at 28, attached as exhibit C. These movie theaters are spread across the United States and include locations in California, New York, Hawaii, Texas, New Jersey, Virginia, and Washington D.C. *Id.* at 28. Moreover, it is probable that a high percentage of tickets are purchased through Defendant's websites because online ticket sales is an area of emphasis for the business executives at Reading Cinemas. *Id.* at 30. For the first quarter of 2024 alone, Reading Cinemas sold approximately $12,245,000 worth of movie tickets in the United States. *Id.* at 35. With an average ticket price of $13.76 (*Id.* at 27), it is reasonable to estimate that around 889,898 tickets were sold in the first quarter of 2024. During the class period, while focusing on its online ticket sales (*Id.* at 30), Reading Cinemas likely sold millions of tickets.[4]

More precise class membership numbers will be determined through further discovery, possible third-party discovery, and class administration, but any common-sense assumption based on these facts satisfies the numerosity threshold of 40 class members. *See Tyus*, 407 F. Supp. 3d at 1097. Almost 70% of Americans are Facebook users. *See* Katherine Schaeffer, 5 Facts about how Americans use Facebook, two decades after its launch, Pew Research Center, Feb. 2, 2024, https://www.pewresearch.org/short-reads/2024/02/02/5-facts-about-how-americans-use-facebook-two-decades-after-its-launch/ (last visited Oct. 17, 2024). With these facts, it is reasonable to estimate that a significant percentage of ticket purchases were made by Facebook users who had their video choices sent to Meta via the Facebook Pixel. Even in an extreme scenario where only .01% of ticket purchasers meet the class definitions, the numerosity requirement is satisfied. *See, e.g.*, *Bauman v. Saxe*, No. 14-cv-01125-RFB-PAL, 2019 WL 157923, at *4 (D. Nev. Jan. 10, 2019) (Boulware, J.). Joinder of these class members across the

---

[4] Surprisingly, Defendant has steadfastly refused to provide information related to ticket sales and videos on its websites. *See* Def.'s First Am. Resp. to Pls.' First Set of Interrogs. at 2-3, attached as Exhibit D.

United States is impracticable, and the low numerosity threshold is easily satisfied for the ticket-purchase classes.

For the subscriber classes, Defendant's corporate representative testified that there are "probably over 10,000" users who have made accounts on Reading Cinemas' websites. Ex. A, Reading Dep. 65:3-23. Consumers provide their personal information to create a user account and subscribe to Reading Cinemas' newsletter. *Id.* The analysis mirrors the ticket-purchaser classes; any reasonable inference or common-sense assumption dictates that the present facts satisfy the numerosity requirement; more exact numbers will be determined during the class administration process. The number of individuals involved, and their geographic distribution make joinder impracticable, and numerosity is satisfied. *See Le v. Zuffa*, LLC, No. 215-cv-01045, 2023 WL 5085064, at *10 (D. Nev. Aug. 9, 2023) (Boulware, J.).

**2. *There are common questions of law and fact.***

The commonality element of Rule 23(a)(2) is satisfied because there are questions of law or fact common to the classes. To satisfy this requirement, the class claims "must depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Lytle*, 114 F.4th at 1023 (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods* LLC, 31 F.4th 651, 666-67 (9th Cir. 2022)). To satisfy Rule 23(a)(2), a party "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up).

To prevail on VPPA claims, Plaintiffs must show that Reading Cinemas (1) is a "video tape service provider" (2) who acted "knowingly" (3) to disclose "personally identifiable information" (4) "concerning any consumer." 18 U.S.C. § 2710(b)(1). These elements raise

common questions with common answers and will be proven or disproven through common proof.

Whether Reading Cinemas is a "video tape service provider" is one common issue that will certainly drive the outcome of this litigation. Defendant has already relied heavily on the Northern District of California's decision in *Garza v. Alamo Intermediate II Holdings, LLC* (No. 23-CV-05849-VC, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024)) to argue that Reading Cinemas is not subject to the VPPA. *See, e.g.*, ECF No. 12 at 2. Plaintiffs disagree (ECF No. 14); however, this issue is currently on appeal to the Ninth Circuit and Plaintiffs acknowledge that the Ninth Circuit's decision could affect the claims in this case. *See* United States Court of Appeals for the Ninth Circuit, Docket Nos. 24-2165 and 23-3882. This issue illustrates the appropriateness of class certification because whether Reading Cinemas is a video tape service provider under the VPPA is a common question capable of resolution on a class-wide basis. *See Lytle*, 114 F.4th at 1023. Reading Cinemas status as a video tape service provider does not change depending on the identity of any class member.

The Court can also determine whether class members qualify as consumers on a class-wide basis. When individuals purchase movie tickets, they purchase goods or services, so they are consumers. 18 U.S.C. § 2710(a)(1). Likewise, those with Reading Cinemas user accounts subscribe to goods or services from Reading Cinemas. *See Salazar v. Nat'l Basketball Ass'n*, No. 23-cv-1147, 2024 WL 4487971, at *12 (2d Cir. Oct. 15, 2024). The VPPA broadly protects consumers. *See* 18 U.S.C. § 2710(a)(1). Under the VPPA "the term 'consumer' means any renter, purchaser, or subscriber of goods or services" from a Provider. 18 U.S.C. § 2710(a)(1). In this case, there are two ways that Plaintiffs and class members qualify as consumers: (1) by purchasing movie tickets on Reading Cinemas' websites, and/or (2) by providing Reading Cinemas with personal information to sign up for a user account. ECF No. 1, ¶¶ 9-10, 37-40, 66-80. The ways in which an individual may qualify as a consumer under the VPPA are illustrated in the table below.

Table 1:

| **Consumer Category 1** | **Consumer Category 2** | **Consumer Category 3** |
|---|---|---|
| Individuals who purchased a movie ticket on Defendant's websites | Individuals who purchased a movie ticket and signed up for a user account | Individuals who signed up for a user account with Defendant |
| Qualify as a consumer because they are a purchaser | Qualify as a consumer because they are a purchaser and a subscriber | Qualify as a consumer because they are a subscriber |

Plaintiffs and class members who purchased movie tickets are purchasers under the VPPA. Put simply: they purchased goods or services from a Provider. ECF No. 1, ¶¶ 9-10. Defendant argues that Plaintiffs are not purchasers because "the only thing they can even claim to have purchased were movie ***tickets***, not cassette tapes or 'similar audio-visual materials.'" ECF No. 11 at 6 (emphasis in original). But this is precisely what the VPPA protects and illustrates why Congress decided that VPPA liability attaches at the time of "request." *See Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 n.3 (N.D. Ga. 2023) ("To the extent that Defendant argues the VPPA requires Plaintiff actually watch the videos, the court rejects that argument. . . . The plain text of the VPPA regulates the disclosure of information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.") (internal quotation omitted). When individuals purchase a movie ticket online, they request specific video content, and VPPA privacy protections apply to that transaction. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("the definition [of Provider] is medium-neutral; the defendant must be in the business of delivering video content, but that content need not be in a particular format."). Movies are certainly within the purview of the statute. When Plaintiffs purchase movie tickets, they are consumers who are making a paid request for Reading Cinemas' audio-visual services.

Additionally, Plaintiff Valentini and others who signed up for accounts with Defendant are "subscribers" under the VPPA. ECF No. 1, ¶¶ 9, 37-40. These subscribers provide Defendant with valuable personal information, including their name, email, birthdate, and location in exchange for weekly newsletters, special offers, enhanced access to movie tickets, special events,

discounts, and free movie screenings. *Id.* at ¶ 37-39. There is no monetary payment requirement to qualify as a subscriber under the VPPA. *See Rancourt v. Meredith Corp.*, No. 22-CV-10696, 2024 WL 381344, at *13 (D. Mass. Feb. 1, 2024); *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *8 ("[W]hile the terms 'renter' and 'buyer' necessarily imply payment of money, the term 'subscriber' does not."). The relationship between those with user accounts and Reading Cinemas evinces a commitment or relationship. *See* ECF No. 1, ¶¶ 37-40; *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (holding that a plaintiff qualifies as a subscriber when they have created an account, received a free newsletter, and received access to special benefits).

Defendant argues that for Plaintiffs to qualify as subscribers, they must subscribe to a specific video service. ECF No. 11 at 6-7. But the VPPA does not conflate these two issues. *See Salazar*, 2024 WL 4487971, at *12 ("Given that 'video tape service provider' is defined broadly to include even those businesses that dabble in video rentals, it makes sense that 'consumer' should be understood to encompass a renter, purchaser, or subscriber of any of the provider's 'goods or services'—audiovisual or not."). The class definitions include objective criteria and whether these facts are sufficient to establish that class members are consumers is a common question.

Whether Reading Cinemas transmitted information to a third party and whether Reading Cinemas had the requisite knowledge are also common questions. The answers to those questions are based on uniform conduct and are therefore capable of class-wide resolution. *Vaquero*, 824 F.3d at 1153. This case presents far more than the "single common question" threshold needed to satisfy Rule 23(a)(2).

**3. *Plaintiffs' claims are typical of the class.***

The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (internal citations and quotations omitted). Because the

considerations underlying the two requirements overlap considerably, the Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Id.* (*citing General Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Plaintiffs' claims are typical of the class because they have the same or similar injury—alleging violations of their privacy rights under the VPPA. *See* ECF No. 1, ¶¶ 9-10. Plaintiffs, like all class members, are Facebook users who purchased movie tickets and/or watched videos on Reading Cinemas' websites. *Id.* Thus, Plaintiffs' claims and defenses are typical of the class they seek to represent.

#### 4. *Plaintiffs and their counsel will fairly and adequately represent class members.*

To determine adequacy, courts consider the questions of (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). First, the named Plaintiffs have no interest antagonistic to or conflicting with the other members of the classes they seek to represent. Like other class members, the named Plaintiffs' interests lie in demonstrating that Defendants' practices violated the VPPA. Second, Plaintiffs have retained attorneys who are also free of conflicts, ready, willing, and able to vigorously prosecute this action on behalf of the class. Plaintiffs' counsel are well-respected members of the legal community with deep experience in class actions of similar size, scope, and complexity to the instant action. Moreover, the Plaintiffs' counsel has the resources to vigorously litigate this matter through trial and appeal if necessary. *See, e.g.*, The Simon Law Firm, P.C. website, accessed at https://simonlawpc.com/. Therefore, this Court should appoint Daniel Valentini and Dallace Butler as class representatives, and appoint Jeremiah W. Nixon and Anthony G. Simon as class counsel.

### B. The case satisfies Rule 23(b)(3).

#### 1. *Questions of law and fact common to the classes predominate.*

"When determining whether common questions predominate, the court must focus on 'important questions apt to drive the resolution of the litigation.'" *Miles v. Kirkland's Stores Inc.*,

89 F.4th 1217, 1222 (9th Cir. 2024) (quoting *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)). That is the case here.

The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim. *Id*. at 665. Common questions predominate over individual questions if they significantly and directly impact each class member's effort to establish liability and entitlement to relief, and are capable of class-wide resolution. *See Le*, 2023 WL 5085064, at *12. The predominance requirement necessarily overlaps with the commonality element of Rule 23(a), and courts may combine the commonality and predominance analysis. *Id.* at *10. As demonstrated above, there are common questions that will determine Reading Cinemas' liability under the VPPA.

If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted) "[M]ore important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Discovery in this case will demonstrate the identical nature of Reading Cinemas' conduct across the entire class. Common questions predominate. As indicated in Defendant's prior court filings, the predominant issues in this case relate to the uniform conduct of Reading Cinemas. *See* ECF No. 12, 5-7 (arguing that Reading Cinemas is not a video tape service provider under the VPPA). There are no standing issues, and most (if not all) common questions can be tried with common evidence. The crux of the

predominant issues is whether Reading Cinemas' uniform actions constitute a violation of the VPPA.

***2. A class action is superior to thousands of individual adjudications, and to no adjudications.***

Courts consider the superiority requirement in light of the matters listed in Rule 23(b)(3): the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability or concentrating the litigation of claims in the particular forum; and the likely difficulties in managing a class action. See Fed. R. Civ. P. 23(b)(3)(A)-(D). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

A class action is superior to individual litigation of class members' claims because individual litigation would be unwieldy and cost-prohibitive. *See Le*, 2023 WL 5085064, at *44. First, there are potentially hundreds of thousands, or even millions, of claims, and all of those claims sink or swim based on the same common issues. It would be highly inefficient to litigate these claims separately. Additionally, consumers may be bound by Defendant's terms and conditions which include a provision that all claims must be brought in Nevada—a location distant from many of Defendant's theaters. Requiring individual claims would be impractical at best, and likely impossible, considering the cost of litigation and the relatively low statutory damages available to consumers. *See* 18 U.S.C. § 2710(c)(2)(A). A class action is a much more efficient and superior method to resolve these claims.

After liability is determined on the key issues, there are multiple ways that claimants can prove class membership—Plaintiffs may obtain event data containing transactions where consumers' Facebook IDs were transmitted with movie purchases to third-party Meta, or class members may submit affidavits that include the necessary information to prove class

membership. However, the specifics of class administration are not a reason to refuse class certification in the Ninth Circuit. The Ninth Circuit does not interpret Rule 23 to require class plaintiffs to demonstrate that there is an "administratively feasible" means of identifying absent class members at the class certification stage. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-24 (9th Cir. 2017); *Bauman* , 2019 WL 157923, at *4. The class definitions make membership capable of determination through clear and objective criteria. The class is therefore manageable through common administrative procedures. Aggregating class members claims and resolving the predominant common question of whether Reading Cinemas' use of the Facebook Pixel violated the VPPA is superior to any alternative.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move this Court for an order certifying the classes as defined above, appointing Daniel Valentini and Dallace Butler as class representatives, and appointing Jeremiah W. Nixon and Anthony G. Simon as class counsel.

Dated: October 18, 2024

Respectfully submitted,

/s/ *Jeremiah W. Nixon*

Anthony G. Simon (pro hac vice)
Jeremiah W. Nixon (pro hac vice)
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
**EGLET ADAMS EGLET HAM HENRIOD**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egletlaw.com
*Attorneys* for *Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2024, a true and accurate copy of Plaintiffs' Motion for Class Certification and supporting papers was filed electronically via the Court's CM/ECF system. A notice of filing will be served on all parties by operation of the Court's CM/ECF system, and the parties may access this filing through that system.

/s/ *Jeremiah W. Nixon*
**THE SIMON LAW FIRM, P.C.**