MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
TYLER ANDREWS, ESQ.
Nevada Bar No. 9949
MATTHEW P. HOXSIE (*pro hac vice*)
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Email: ferrariom@gtlaw.com
tyler.andrews@gtlaw.com

*Counsel for Defendant*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No.: 2:24-cv-00255-RFB-MDC

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [ECF NO. 32]**

Plaintiffs' Motion for Class Certification (the "Motion") fails for the primary reason that it improperly assumes that simply by having a Facebook account, any visitor to Reading International, Inc.'s ("Reading") website must have had personally identifiable information disclosed to Facebook in violation of the Video Privacy Protection Act ("VPPA"). Contrary to Plaintiffs' broad and entirely unsupported assumption, there is no uniform method to determine whether a Facebook member was actually logged into Facebook, in the same browser, and failed to block cookies, at the time they allegedly purchased a movie ticket or viewed a movie trailer on Reading's website and thus whether any information was actually disclosed (which Reading disputes occurred at all). *See Martinez v. D2C, LLC*, Civil Action No. 23-21394-Civ-Scola, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying motion for class certification and rejecting argument that the mere presence of the Facebook (now Meta) Pixel on defendant's website resulted in the transmission of tens of thousands of personally identifiable information because even

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

plaintiff conceded that the class would need to exclude persons who used ad-blocking software (up to 30% of all persons) and where defendant's expert further stated the court would have to determine whether a person was actually logged in and accessed the website in the same browser as they were logged into Facebook, neither of which plaintiff had done in moving for certification); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *14-15 (N.D. Cal. Jun. 17, 2014) (denying plaintiff's motion for class certification because the inquiry whether a disclosure allegedly occurred "depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)"). Because Plaintiffs focus at the highest level only broadly on Facebook "members" without any consideration whether information was actually disclosed, the Motion necessarily fails.

Indeed, and tellingly, Plaintiffs do not identify facts supporting the disclosure of their own information, let alone any other individuals who allegedly had their information disclosed to Facebook. Instead, Plaintiffs' Motion relies on pure conjecture and unsupported and conclusory allegations. For example, with respect to numerosity, Plaintiffs allege that "Reading Cinemas likely sold millions of tickets" and separately that "there are 'probably over 10,000' users who have made accounts on Reading Cinemas' websites." (Mtn. at 10:13, 11:4.) Plaintiffs then state, based on those speculative and irrelevant numbers, that "any reasonable inference or common-sense assumption dictates that the present facts satisfy the numerosity requirement" and plead that the Court defer any further examination on the grounds that "more exact numbers will be determined during the class administrative process." (Mtn. at 11:8-9.) Any inference between the number of ticket sales to the disclosure of information to Facebook is wholly unsupported and speculative. And it is improper to argue that "more exact numbers" might be determined during the class administration process. Plaintiffs must establish the requirements of Rule 23 **now**. Plaintiffs have not done so.[1]

---

[1] Plaintiffs proffer that after liability is established, Plaintiffs may then prove class membership by "obtain[ing] event data containing transactions where consumers' Facebook IDs were transmitted with movie purchases to third-party Meta, or class members may submit affidavits that include the necessary information to prove class membership." (Mtn. at 17:24-18:1.) First, membership by affidavit is unreliable and deficient, for the reasons stated herein. Second, it is improper that Plaintiffs seek to push class membership determinations until after liability on key issues has been determined. That puts the cart before the horse, and reverses how a class action should proceed.

With respect to the requirement that Plaintiffs establish predominance of class wide issues over individual issues, Plaintiffs offer nothing beyond their broad conclusory statement that "[t]he crux of the predominant issues is whether Reading Cinemas' uniform actions constitute a violation of the VPPA." (Mtn. at 16:25-17:2.) Plaintiffs offer nothing to support that conclusion. And it is at odds with two VPPA cases concluding that any uniformity demonstrated by a company's website is outweighed by individual issues affecting each plaintiff: whether the individual was longed into Facebook, visited the company's website on the same device and browser as their Facebook login, failed to deploy ad blocking software, or cleared their cookies (including the c_user cookie at issue here). *See, e.g.*, *Martinez*, 2024 WL 4367406; *In re Hulu*, 2014 WL 2758598. These individual issues outweigh any common question that might exist, as is thoroughly discussed in the attached expert report of James Vint. *See* Declaration of James Vint in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification, attached hereto as **Exhibit A** (hereinafter the "Vint Declaration").[2] And Plaintiffs' do not identify a single VPPA class certification case to the contrary in their Motion.

For these reasons, Reading respectfully requests the Court deny the Motion.

## I. Plaintiffs Misstate the Facts and Rely on Speculative and Conclusory Allegations

The Motion relies nearly exclusively on general allegations to claim that Reading transmits personally identifiable information in violation of the VPPA. The only evidentiary support that Plaintiffs cite is undercut by uncontradicted testimony from Reading. These errors and factual deficiencies are important because the burden rests on the party seeking certification to establish through evidentiary proof that the requirements for class certification are met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). If any doubts remain about whether the standard is satisfied, "the party with the burden of proof loses." *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997). Indeed, if all else is equal, the presumption runs against class certification because "[t]he class

It also seemingly confirms what Plaintiffs should have arguably attempted to do by this point—obtain Meta event data if it existed to support Plaintiffs' claims.

[2] Mr. Vint was the defendant's expert in the *Martinez* case.



Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

action is an ***exception*** to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast*, 569 U.S. at 33 (citation omitted) (emphasis added).

***First,*** Plaintiffs claim that "Defendant made an affirmative choice to install this code on its website to enable the collection and disclosure of its consumers' information." (Mtn. at 6:17-18.) Plaintiffs cite their own pleadings (which are not evidence) and then Defendant's testimony stating only that it instructed its code expert to install the Pixel.[3] (Ex. A, Reading Dep. 35:20-22.) But that testimony does not support the intentional collection and disclosure of "consumers' information" to a third party. Indeed, Plaintiffs' sleight-of-hand attempt to connect two disparate concepts ((a) Reading's installation of the Pixel, with (b) the knowing disclosure of information) is not supported by any evidence at all. Just the opposite, Defendant testified that, irrespective of having installed the Pixel, it does not knowingly disclose its customers' personal information. (*Id.* 35:25-36:4, 36:18-20, 51:9-12.)

***Second,*** Plaintiffs allege that "[w]hen an individual with a Facebook account purchases movie tickets or watches videos on Reading Cinemas' websites, the Facebook Pixel simultaneously discloses the name of the audio-visual materials requested and the individual's Facebook ID." (Mtn. at 6:20-23 (citing ECF No. 1 ¶¶ 48-53 (i.e., just the allegations in the Complaint)).) The only actual evidence that Plaintiffs cite is Reading's testimony that "information is transmitted to confirm when individuals make a movie ticket purchase on [its] website." (Ex. A, Reading Dep. 64:2-7.) The testimony does not support Plaintiffs' broad allegation that the term "information" includes, specifically, personally identifiable information regarding videos that were viewed. Indeed, and directly opposite to Plaintiffs' claims, Reading has uniformly stated that the only "information" it is aware is transmitted is "essentially 'yes' or 'no' whether an ad caused a conversion to a movie ticket sale by indicating the number of clicks/conversions and total transaction value from a specific ad that was run – in effect 'yes' or 'no' whether there were responses to the Facebook ads." (Ex. D, Response to Interrogatory No. 6. (stating that "Defendant does not sell or knowingly disclose any personally identifiable

[3] Exhibit B to the Motion, which purports to be the "Get Started" page for the Facebook Pixel, does not contain any language indicating that any personally identifiable information is disclosed to Facebook.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

information"); *see also* Ex. A, Reading Dep. 64:20-23 (when asked "[a]re any . . . digital events logged, captured, or recorded when a website user watches a video," Reading answered "No").) This is further supported by Mr. Vint's declaration "disagree[ing] that any data transmitted to Meta would have personally identified individual subscribers [and] the video material that loaded on the website" "in all or potentially even most circumstances." (Vint Declaration, ¶¶ 16-17.)

***Third***, Plaintiffs allege that Reading likely sold millions of movie tickets but object that "[s]urprisingly, Defendant has steadfastly refused to provide information related to ticket sales and videos on its websites." (Mtn. at 10, n.4.) Plaintiffs' argument is without merit and is not well taken. First, Reading objected to producing ticket sale data because ticket sales are not covered by the VPPA, and ***Plaintiffs never moved to compel the production of such information***. Instead, they accepted Reading's objection, and cannot now be heard to complain. Second, and with respect to information relating to videos linked on its websites, Reading did <u>not</u> refuse to produce such information. Just the opposite, Reading stated that ***no such information existed because it does not track video views***. (Ex. A, Reading Dep. 64:20-65:2 (stating there is no event logged or captured if a video is viewed: "No. We've never tracked trailer - - trailer views."); Ex. D, Response to Interrogatory No. 6 ("Defendant does not use the Facebook Pixel to track movie trailers viewed."); *id.*, Response to Interrogatory No. 8 ("Defendant further states that it does not track movie trailer views, and in fact does not host movie trailers on its site. Instead, movie trailers are streamed from YouTube or directly from the distributor and that all Defendant provides is a link to the third-party host.").)

Stated simply, Plaintiffs offer no facts demonstrating that any personally identifiable information was disclosed, let alone disclosure that would be consistent across the proposed classes. That Plaintiffs nevertheless attempt to argue that Reading's testimony supports the knowing and intentional disclosure of personally identifiable information regarding audio visual materials to Facebook is flatly contradicted and therefore false and not well taken.

## II. Plaintiffs Have Not Established Their Own Standing to Pursue a VPPA Claim

Plaintiffs have not established standing to pursue their own claims. "[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976). Accordingly, named plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants have injured separate absent class members. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 961-62 (9th Cir. 2004).

Following are the only allegations in the Complaint concerning the named Plaintiffs:

> 9. Plaintiff Daniel Valentini is an adult citizen of the State of New York who resides in the State of New York. Plaintiff Valentini has had a Facebook account since approximately 2008 and has used Defendant's website and **purchased movie tickets on that website**. Additionally, Plaintiff Valentini has a member account with Defendant.
>
> 10. Plaintiff Dallace Butler is an adult citizen of the State of California who resides in the State of California. Plaintiff Butler has had a Facebook account since approximately 2007 and has used Defendant's website and **has purchased movie tickets on that website**.

(ECF No. 1 (emphasis added).)

But movie ticket sales are not covered by the VPPA. *See Garza v. Alamo Intermediate II Holdings, LLC*, No. 23-cv-05849-VC, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024) ("The Video Privacy Protection Act claim is dismissed because a movie theater operator like Alamo is not a 'video tape service provider' under the statute"); *Osheske v. Silver Cinemas Acquisition Co.*, No. 2:22-cv-09463-HDV-JCx, 2023 WL 8188464, at *1 (C.D. Cal. Oct. 31, 2023) (refusing to find a movie theater subject to the VPPA and stating that to "expand the VPPA to cover the ***public*** act of attending a movie theater is a bridge too far and is patently inconsistent with both the plain language and legislative history of the VPPA itself"). And Plaintiffs do not even claim to have viewed "audio visual materials" on Reading's website, either in their Complaint or in, for example, signed declarations attached to the Motion (of which there are none).

Instead, Plaintiffs' Complaint contains only general allegations (upon information and belief) regarding Reading's actions and speculates generally—detached from any alleged harm to Plaintiffs—that Reading collects and discloses personally identifiable information in violation of the VPPA. (*See generally* ECF No. 1 ¶¶ 15-55 (i.e., using broad and unspecific introductory

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

phrases such as: "when a consumer" or "if an individual," absent any link that Plaintiffs are such "consumer[s]" or "individual[s]").) Indeed, all of Plaintiffs' allegations are framed in the abstract—without a single allegation (let alone evidentiary fact) that Plaintiffs themselves viewed videos and had personally identifiable information disclosed to Facebook.

Because Plaintiffs have not established, let alone even alleged, that they viewed "audio visual materials" and had their personally identifiable information disclosed to Facebook, they lack standing to pursue the class action claims they seek to pursue here.

**III. Plaintiffs Do Not Establish That Any Proposed Class Would be Numerous**

Beyond their own lack of standing, Plaintiffs' attempt to establish numerosity is problematic for several reasons.

***First***, Plaintiffs' reliance upon Pew Research stating that "[a]lmost 70% of Americans are Facebook users" (Mtn. at 10:17-20) is misplaced. In fact, the exact same argument was <u>rejected</u> expressly in *Martinez* because "being *logged in* to Facebook—not just having an account—is a prerequisite to the Pixel disclosing information." 2024 WL 4367406 at *7 (referring to Pew Research poll).

***Second***, and even then, "being logged in to Facebook is still not enough to necessarily prompt a Pixel transmission: a subscriber must also have accessed the prerecorded video on [the company's] website through the *same web browser and device* through which the subscriber (and not another user) was logged into Facebook." *Id.* (stating that if a user was not logged in, the c_user (containing the Facebook ID) "would *not* be sent to Facebook"); *see also* Vint Declaration, ¶ 38 ("if a user visited the Website, logged into Facebook and elected to remain signed into Facebook, the c_user value *still* would not be sent to Facebook if the user used a different browser to access Facebook than to access the Website").

Accordingly, even if "[a]lmost 70% of Americans are Facebook users," (Mtn. at 10:17) "that tells the Court nothing about the percentage of the . . . subscribers who viewed a prerecorded video [who] were also *logged in to* their own Facebook accounts, through the *same browser*, and on the *same device* on which they viewed that video." *Martinez*, 2024 WL 4367406 at *7.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

***Third***, and beyond those problems, any proposed class (if any could be identified or ascertained) would be further narrowed by web-browser blockers. *Id.*; *see also* Vint Declaration, ¶¶ 39-43, 50-57. Whereas in *Martinez* the plaintiff estimated that "70% of the United States population uses a browser that does not block the pixel," the court rejected that argument because plaintiff estimated in fact only that Google Chrome and Microsoft Edge combined to make up 70% of the market share—omitting "any information about what percentage of that population actually use their Chrome or Edge browser under this default configuration." 2024 WL 4367406 at *7. Just like plaintiff in *Martinez*, Plaintiffs here offer no method for accounting for pixel-blocking software whatsoever—which a large number of Americans use. *See id.* at *6; *see also* Vint Declaration, ¶ 56 (noting "almost 40% of US internet users had adopted some form of such software" and stating that "[i]f a user installs a third-party cookie blocker, the c_user value would not be sent to Facebook").

As the court found in *Martinez*, "[w]ithout '*some showing*' as to these several variables, the Plaintiffs have not afforded the court 'the means to make a supported factual finding, that the class [to be] certified meets the numerosity requirement.'" 2024 WL 4367406 at *9 (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). "Although it may be tempting to assume numerosity based on the sheer size of the Plaintiffs' starting point . . . , such baseless assumptions cannot carry the day." *Id.* (citing *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005)).

Neither is Plaintiffs' claim that there are "probably over 10,000 users who have made accounts" sufficient. (Mtn. at 11:3-11.) Plaintiffs do not even allege, let alone provide evidence, that "user account" information was disclosed (it is not). The only ***alleged*** disclosure is of Facebook ID information as referred to above—but without any proof from Facebook (now Meta) that any disclosure occurred.[4] Indeed, Plaintiffs do not offer any connection between "user accounts" and Facebook accounts, logins, or tracking. Instead, Plaintiffs only broadly claim that "reasonable inference or common-sense assumption dictates that the present facts satisfy the

[4] Unlike the plaintiffs in *Martinez*, who (unsuccessfully) attempted to use "Meta's event data" to demonstrate Pixel transmission to Facebook, Plaintiffs never requested any records from Facebook supporting that even their personal information was disclosed.

numerosity requirement." (Mtn. at 11:7-8.) Plaintiffs' conclusory allegation does not satisfy their burden to establish that the numerosity requirement of Rule 23 is met.

Nor do the cases that Plaintiffs cite support their position. Plaintiffs cite *Bauman v. Saxe*, a Telephone Consumer Protection Act ("TCPA") claim in which the plaintiffs established the receipt of messages from the defendant. No. 14-cv-01125-RFB-PAL, 2019 WL 157923, at *2 (D. Nev. Jan. 10, 2019). In moving for class certification, plaintiffs sought to pursue a narrow subclass of persons sent marketing messages by the defendant who could be determined by evidentiary facts, i.e., the defendant's own records: that "Defendants sent 292,302 text messages to 120,363 different telephone numbers." *Id.* at *4. The plaintiffs also provided billing records demonstrating that "most of these text messages were sent to cellular telephone numbers provided by cellular telephone carriers," supporting the fact that the messages would actually have been sent and received in violation of the TCPA. *Id.* Here, there is no evidence justifying the type of presumptions and inferences that were applied in *Bauman*. Where the plaintiffs in *Bauman* provided evidence justifying a presumption that messages were sent to numerous persons, there is <u>no</u> evidence that any personally identifiable information was disclosed to Facebook for any individual.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Plaintiffs also cite *Le v. Zuffa, LLC*, in which a group of current and former fighters in the UFC sued Zuffa, an MMA promoter, over alleged antitrust conduct. NO. 215-cv-01045, 2023 WL 5085064 at *1 (D. Nev. Aug. 9, 2023). That case is apples and oranges to the evidence and claims that Plaintiffs put forth here. There, the plaintiffs identified (and could readily identify through defendant's records) a "bout" class consisting of approximately 1,200 persons who "competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017." *Id.* at *9-10. Indeed, the "bout" class readily demonstrated an objectively-determined group of persons for which ***additional*** determinations were not needed to establish the existence of a numerous class. Here, by contrast, Plaintiff's purported class requires not just that a person be a Facebook member, which is the only criteria Plaintiffs attempt to address, but also have been logged in, using the same browser, without ad-blocking, before there <u>might</u> potentially have been a disclosure. (*See generally* Vint Declaration,

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

¶¶ 18-20, 27-60 ("Based on the considerations outlined above, and the inability to ascertain, on a class-wide basis, the applicable privacy settings, user actions, and relationship with the Website and Facebook, it is not possible to determine, without individualized proof, whether a user's personally identifiable information was transmitted or disclosed to Facebook while on the Website.").) If anything, *Le v. Zuffa, LLC* underscores the issues just identified, because the Court there also denied a purported "identity" class consisting of "[e]ach and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials in the United States from December 16, 2010 to June 30, 2017." For that "identity" class, the Court recognized "the wide variety of identity rights at issue" that would need to still be addressed in order to determine class membership, and that plaintiffs had failed to present a methodology that could demonstrate common impact through common evidence. *Id.* at *46. The plaintiffs' failure to certify the "identity" class is far more analogous to this case than the straightforward, one-dimensional "bout" class they proposed and that was certified.

**IV. Plaintiffs' Proposed Classes are Not Ascertainable**

Federal Rule of Civil Procedure 23 implicitly requires that a proposed class be "adequately defined" and "clearly ascertainable" by reference to "objective, rather than subjective, criteria." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). Plaintiffs argue that they don't need to propose an administratively feasible means of identifying absent class members at this stage. (Mtn. at 18:2-5.) The problem for Plaintiffs, however, is that they don't propose ***any*** methodology considering the required criteria at all. Plaintiffs propose classes consisting of persons who were purportedly Facebook members—that is all. But even assuming that some cross-reference between Facebook account records and Reading's records were possible (and Plaintiffs offer nothing to establish that it is), that "does not end the ascertainability inquiry, however, because class members are [only] those [individuals] who actually had their PII transmitted to Facebook," which "turns on whether the c_user cookie was sent to Facebook, which depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)." *In re Hulu*, 2014 WL 2758598 at *13; *see also* Vint Declaration, ¶ 57 ("In summary, even if a user visited the Website, logged into Facebook,

elected to remain logged into Facebook, used the same device to access both Facebook and the Website, did not use a browser that blocks cookies by default, and did not use Facebook's mobile application, the c_user value *still* would not be sent to Facebook if the user (1) blocked third-party cookies; (2) set the browser cache to self-destruct; (3) cleared cookies; or (4) downloaded and enabled third-part cookie blocker or anti-tracking software.").

And even if certain exclusionary criteria could be accounted for (such as by accounting for default settings and individuals who do not clear cookies or reset their browser, which Plaintiffs do not propose doing), "[t]he only way [to ascertain who is in the class or subclasses] is self-reporting." *Id.* That is at odds with the cases cited by Plaintiffs, such as *Bauman* where membership could be ascertained by checking phone records and *Le v. Zuffy, Inc.*, where membership could be determined using records showing the listing of current and former UFC Fighters.

To that point, self-reporting might suffice if the defendant's company records otherwise permitted the parties to verify class member status, but that is not the case here. (*See* Vint Declaration, ¶ 17 ("I am unaware of any production by Meta, in other VPPA matters, that provided the c_user value or any of the values collected on account sign up, namely, email address, first name, last name or zip code for any user. I am also unaware that Meta would receive any indication of whether an event was associated with a 'subscriber' or 'member'. Even if Meta were to produce data, it would not be feasible to ascertain the Facebook account to which any event would be associated, nor would it be a straightforward analysis to understand which Facebook users were subscribers and which were not, making the proposed classes nearly impossible to determine."); *id.*, ¶ 25 ("[I]t is not possible, based on data held by Reading or data stored on the browser of the device used to access the Website, to determine a user's unique browser settings, device usage, or relationship (*i.e.*, account holder or logged in status) with Facebook.").

Unlike in cases where cross-referencing emails or company records may suffice, "cross-referencing . . . records here would identify a large pool of users with only a subset of the pool suffering any injury." *In re Hulu*, 2014 WL 2758598 at *15. "Plaintiffs have offered no way to identify individual class members" at all, let alone by a measure beyond "broad notice and a self-

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

reporting affidavit." *Id.* In *In re Hulu*, the court held such efforts insufficient:

> Here, the claims apparently are not amenable to ready verification. And at $2,500 per class member, they are not small. As Hulu points out, this amount creates incentives for claimants. In addition, on this record, the court cannot tell how potential class members reliably could establish by affidavit the answers to the potential questions: do you log into Facebook and Hulu from the same browser; do you log out of Facebook; do you set browser settings to clear cookies; and do you use software to block cookies? The affidavit seems prone to the same subjective memory problems identified in *Xavier [v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011)] (attesting to the number of cigarettes smoked over decades is categorically different than swearing that "I have been to Paris"). The possibility of substantial pecuniary gain affects this analysis too. *Accord id.* That incentive and the vagaries of subjective recollection makes this case different than the small-ticket consumer protection class actions that this district certifies routinely.
>
> Whether these issues could be resolved by narrowing the class definition, by defining subclasses, by reference to objective criteria, by a damages analysis that addresses pecuniary incentives, or otherwise, the undersigned cannot tell. But on this record, Plaintiffs have not defined an ascertainable class.

*Id.* at *16. The same is true here.

### V. Plaintiffs' Proposed Common Questions Are Not Capable of Resolving Issues in One Stroke and Individual Inquiries Predominate Over Any Question That Could be Said to Be Common

Rule 23(a)(2) required that Plaintiffs present *evidence* showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For this inquiry, what matters are questions that have "common answers" and whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Similarly, Rule 23(b)(3)'s "even more demanding" requirement imposes upon the court the duty to take a close look at whether common questions predominate over individual ones. *Bliss v. CoreCivic, Inc.*, 711 F. Supp. 3d 1233, 1237-38 (denying class certification because "even if the proposed class and subclass could meet the four requirements of Rule 23(a), Bliss fails to demonstrate that Rule 23(b)(3)'s predominance requirement is satisfied"). The predominance analysis is not numerical but pragmatic, requiring a qualitative assessment of the issues in the case. *In re Hulu*, 2014 WL 2758598 at *20.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Here, just as in *In re Hulu*, Plaintiffs allege a purported common claim and injury: "disclosure of their PII by the transmission of the Facebook ID cookies and their watched videos in violation of the VPPA." *Id.* at *21. But the purported common claim is not capable of resolving "an issue that is central to the validity of each one of the claims in one stroke" because, as stated above, there is no (even potential) disclosure if the individual Facebook member is not logged into Facebook at the time and if the member does not access the company's website through the same browser as they are logged into Facebook. *See Martinez*, 2024 WL 4367406 at *7.

There is another potentially even larger issue preventing class certification on Plaintiffs' VPPA claim: "cookie clearing or blocking." The c_user cookie, which includes the Facebook ID, is transmitted only (if at all) when a website user watched a video "having used the same computer and web browser to log into Facebook in the previous four weeks using default settings." *In re Hulu*, 2014 WL 2758598 at *2 (fact taken from the parties' "joint statement of undisputed facts" in that case). Moreover, and as Hulu's expert explained there, "the c_user cookie is cleared if the Facebook 'keep me logged in' box is not checked, if the user manually cleared cookies after the Facebook session and before the [current] session, or if the user used cookie-blocking or ad-blocking software that prevented disclosures." *Id.* (emphasis added); *see also id.* at *22 (stating up to 65.3% of study respondents used ad-blocking software).

"In the end, the substantial issues about [being logged into Facebook as an initial matter,] remaining logged into Facebook[,] and clearing and blocking cookies mean that the court cannot conclude on this record that the common issues predominate over the individual ones." *Id.* Accordingly, the proposed common question cannot resolve an issue central to the claims of all members "in one stroke," individual issues outweigh any proposed common question, and the Motion should be denied.

## VI. Conclusion

While Plaintiffs incredulously claim that "[d]iscovery in this case will demonstrate the identical nature of Reading Cinemas' conduct across the entire class," (Mtn. at 16:22-23) it was Plaintiffs' burden during class discovery to demonstrate the identical nature of their purported claims. Plaintiffs have not met their burden here, and they cannot meet it for the reasons discussed

above. Nor can they ask this Court to grant certification on their hope that discovery will, in the future, demonstrate the identical nature of their claims. For the reasons stated herein, Reading respectfully requests the Court deny the Motion.

DATED this 22nd day of November, 2024

**GREENBERG TRAURIG, LLP**

By: */s/ Tyler Andrews*
MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
TYLER ANDREWS, ESQ.
Nevada Bar No. 9949
MATTHEW P. HOXSIE (*pro hac vice*)
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Reading International, Inc.*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that, a true and correct copy of the foregoing ***Defendants' Opposition to Plaintiffs' Motion for Class Certification*** was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

DATED this 22nd day of November 2024.

*<u>/s/ Andrea Lee Rosehill</u>*
An employee of GREENBERG TRAURIG, LLP

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)