Anthony G. Simon (pro hac vice)
Jeremiah W. Nixon (pro hac vice)
THE SIMON LAW FIRM, P.C.
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
EGLET ADAMS EGLET HAM HENRIOD
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egetlaw.com

*Attorneys for Plaintiffs and the Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

DANIEL VALENTINI and DALLACE BUTLER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

READING INTERNATIONAL, INC.,

Defendant.

Case No. 2:24-cv-00255-RFB-MDC

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

The Court ordered early class certification briefing for good reason—"the main factor in the action at this point is class certification." ECF No. 19. The predominant issues in this case all hinge on Reading Cinemas' uniform business practices. For all of Defendant's efforts to complicate the issues, this case boils down to a few class-wide questions, such as whether the Facebook ID constitutes "personally identifiable information," whether Reading Cinemas is a "video tape service provider," and whether Reading Cinemas knowingly disclosed consumer information to third parties. Certifying the class will allow for efficient resolution of the overarching issues early.

The first sentence of Defendant's opposition contains its fatal flaw. *See* Opp. at 1:18-21. Defendant incorrectly asserts that Plaintiffs' Motion for Class Certification "assumes that simply by having a Facebook account, any visitor to Reading International, Inc.'s ("Reading") website must have personally identifiable information disclosed to Facebook in violation of the Video Privacy Protection Act ("VPPA"). *Id.* This is flatly wrong. The class definitions limit themselves to only include individuals who had their information disclosed to Meta by Reading Cinemas. *See* Mot. at 1:24-2:15. After this mistaken first sentence, the rest of Defendant's Opposition is tainted as its logic is built atop this critical error.

Reading Cinemas' practices are uniform because it installed the Facebook Pixel across its websites; however, as stated in the Motion for Class Certification, the classes only include the consumers who had their information disclosed to Meta. *See* Mot. at 1:24-2:15. Defendant's systematic company practices were the same toward all website visitors, but not all website visitors with Facebook accounts are members of the classes. Defendant's Opposition argues against a straw man.

Throughout its Opposition, Defendant hangs its hat on out-of-date and out-of-circuit caselaw. Specifically, Defendant relies on two cases: *Martinez v. D2C, LLC*, Case No. 1:23-cv-21394, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) and *In re Hulu Privacy Litig*., Case No. 3:11-cv-03764, 2024 WL 2758598 (N.D. Cal. Jun. 17, 2014). Neither case supports Defendant's position. First, *In re Hulu* dealt with an entirely different technology: the Facebook "Like" button. *In re Hulu*, 2024 WL 2758598, at *5. Still, *In re Hulu* directly supports finding in favor of Plaintiffs on numerosity, commonality, typicality, and adequacy. *See id.* at *16-19. However, the *In re Hulu* court dismissed the plaintiffs' claims because the user identity and title of video material were transmitted separately. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015). Here, in contrast, the Facebook ID and video title were disclosed in a single transmission. *See, e.g.*, ECF No. 1, ¶¶ 50, 52. Further, the Northern District of California's *In re Hulu* predates the Ninth Circuit's decision in *Briseno v. ConAgra Foods, Inc*. 844 F.3d 1121, 1126 (9th Cir. 2017). Defendant failed to address *Briseno* and the governing Ninth Circuit law,

which now expressly rejects any sort of administrative feasibility requirement. Plaintiffs' class definitions are objectively defined, and Defendant's attempt to inject an implicit administrative feasibility requirement is not supported by the current governing caselaw.

Similarly, *Martinez* does not prevent certification here either. First, *Martinez* is a case from the Southern District of Florida, and the Eleventh Circuit's caselaw on numerosity does not govern this case. *Martinez*, 2024 WL 4367406. Even so, there is more context here to support numerosity. As articulated in the Motion for Class Certification and again discussed below, the information in this case supports the finding that Plaintiffs meet Rule 23's minimal threshold of numerosity as interpreted in the Ninth Circuit. *See, e.g.*, *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, Case No. 2:18-cv-00979, 2020 WL 2114353, at *2 (D. Nev. May 1, 2020).

Rule 23 is a procedural device and should not be transformed into a barrier against legitimate claims. Detailed factual development can, and will, occur as this case moves forward into discovery. Factual discovery on all aspects of Defendant's disclosures to Meta will provide more depth and specificity. But early certification is especially appropriate when the claims are based on a statute enacted to deter undesirable conduct. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). Defendant admits that it installed the Facebook Pixel on its websites. ECF No. 32-2, Ex. A at 35:20-22. Its own expert confirmed that the Facebook Pixel operates to disclose Facebook IDs to Meta. *See* Opp. at Ex. A, Vint Decl. ¶ 31. The investigative screenshots incorporated in the Complaint illustrate how Defendant's use of the Facebook Pixel transmitted Facebook IDs and video titles in a single transmission for class members. *See* ECF No. 1, ¶¶ 50, 52. Defendant does not, and cannot, deny this fact, so instead, it suggests overlapping, hypothetical reasons that an individual Facebook user may not have their information disclosed. But this is irrelevant because those are not class members. Early certification furthers Rule 23's objectives while also promoting efficiency. The Court should ignore Defendant's manufactured complexity and grant certification so the parties can efficiently move forward with discovery and focus on the "important questions apt to drive the resolution of

the litigation." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024) (quotation omitted).

**I. Defendant misstates the Rule 23 standards.**

The issue at class certification is not which party should ultimately prevail but whether common issues will predominate in litigating the merits. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 549 (2013).

The issue of a legal violation is common and predominant. Defendant admits that it installed the Facebook Pixel on its websites. ECF No. 32-2, Ex. A at 35:20-22. The entire purpose of the Facebook Pixel is to link consumers' activity on Reading's web pages to their personal Facebook pages for marketing purposes. ECF No. 32-2, Ex. A at 64:2-7. The Pixel "relies on Facebook cookies, which enable [Meta] to match [Defendant's] website visitors to their respective Facebook User accounts." ECF No. 32-3, Ex. B at 2. And "[b]y default, the Pixel will track URLs visited, domains visited, and the devices [website] visitors use." *Id.* This is precisely what the Defendant's websites did.[1] Upon examination, and as included in Figure 1 and Figure 2 incorporated in the Complaint, the code intentionally installed on Defendant's websites transmitted consumers' personally identifiable information to Meta:

[1] Sometime after the filing of this lawsuit, Defendant deactivated the use of the Facebook Pixel on its websites. ECF No. 32-2, Ex. A at 33:5-9.

▾ Request Headers

| | |
|---|---|
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /tr/?id=207268761486794&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Ffilm%2Fmean-girls-2024%3Fdate%3D2024-01-16&rl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Fticketing%2Fstep-5&if=false&ts=1705434655043&cd[buttonFeatures]=%7B%22classList%22%3A%22showtime%20reserved-seating%22%2C%22destination%22%3A%22https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Fticketing%2Fstep-2%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22input%22%2C%22type%22%3A%22submit%22%2C%22name%22%3A%22%22%2C%22value%22%3A%229%3A40%20PM%22%7D&cd[buttonText]=0%3A0%20PM&cd[formFeatures]=%5B%7B%22id%22%3A%22%22%2C%22name%22%3A%22_method%22%2C%22tag%22%3A%22input%22%2C%22inputType%22%3A%22hidden%22%7D%2C%7B%22id%22%3A%22%22%2C%22name%22%3A%22_token%22%2C%22tag%22%3A%22input%22%2C%22inputType%22%3A%22hidden%22%7D%2C%7B%22id%22%3A%22%22%2C%22name%22%3A%22showtime%22%2C%22tag%22%3A%22input%22%2C%22inputType%22%3A%22hidden%22%7D%5D&cd[pageFeatures]=%7B%22title%22%3A%22MEAN%20GIRLS%20%7C%20Movie%20Details%20%26%20Showtimes%20at%20Manville%20with%20TITAN%20LUXE%22%7D&sw=1920&sh=1080&v=2.9.140&r=stable&ec=2&o=4126&fbp=fb.1.1705360196423.1834374142&ler=other&it=1705434607121&coo=false&es=automatic&tm=3&cdl=&rqm=GET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br |
| Accept-Language: | en-US,en;q=0.9 |
| Cache-Control: | no-cache |
| Cookie: | sb=Mr2lZRBUEjBZfK8oyQOTBy2v; datr=Mr2lZdc0W2Tt-gd4nKwoA1Q9; c_user=6155541[redacted] dpr=1; xs=45%3APYRD8f_wwfb4Lw%3A2%3A1705413054%3A-1%3A-1%3A%3AAcX8o3hYHmqeOX1q4AtZ61P5bfGXbO4B052xppevAQ; fr=1lVKem491uRrvtI9N.AWVV0OMUP3bRbJwxKej5uuU5zAQ.BlptMq.HM.AAA.0.0.BlptMq.AWXDXBQyEX0 |

Figure 1: HTTP single communication session sent from the device to Facebook, reveals the name of the movie the consumer has purchased, and the customer's FID (c_user field). ECF No. 1, ¶ 50.

▾ Request Headers

| | |
|---|---|
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /tr/?id=207268761486794&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Ffilm%2Fmean-girls-2024&rl=https%3A%2F%2Fwww.readingcinemasus.com%2Fmanville%2Fshowtimes-and-tickets%2Fnow-playing&if=false&ts=1705436022696&cd[buttonFeatures]=%7B%22classList%22%3A%22play-button%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22url(%5C%22https%3A%2F%2Fd994l96tlvogv.cloudfront.net%2Fassets%2Freading%2Fimg%2Fyoutube-play.png%5C%22)%22%2C%22innerText%22%3A%22%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22div%22%2C%22type%22%3Anull%7D&cd[buttonText]=&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22MEAN%20GIRLS%20%7C%20Movie%20Details%20%26%20Showtimes%20at%20Manville%20with%20TITAN%20LUXE%22%7D&sw=1920&sh=1080&v=2.9.140&r=stable&ec=2&o=4126&fbp=fb.1.1705360196423.1834374142&ler=other&it=1705436019491&coo=false&es=automatic&tm=3&cdl=&rqm=GET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br |
| Accept-Language: | en-US,en;q=0.9 |
| Cache-Control: | no-cache |
| Cookie: | sb=Mr2IZRBUEjBZfK8oyQOTBy2v; datr=Mr2IZdc0W2Tt-gd4nKwoA1Q9; c_user=6155541[redacted] dpr=1; xs=45%3APYRD8f_wwfb4Lw%3A2%3A1705413054%3A-1%3A-1%3A%3AAcX8o3hYHmqeOX1q4AtZ61P5bfGXbO4B052xppevAQ; fr=1lVKem491uRrvtI9N.AWVV0OMUP3bRbJwxKej5uuU5zAQ.BlptMq.HM.AAA.0.0.BlptMq.AWXDXBQyEX0 |

Figure 2: HTTP single communication session sent from the device to Facebook, reveals the movie trailer viewed, and the customer's FID (c_user field). ECF No. 1, ¶ 52.

Defendant's own expert concedes that if an individual is logged into Facebook in their device's browser and the Facebook Pixel is deployed on Reading's website, then the "c_user value" (Facebook ID) will be transmitted to Meta. *See* Opp. at Ex. A, Vint Decl. ¶ 31. Likewise, Defendant's Response to Plaintiffs' Requests for Production includes "high-level results of a Facebook ad indicating the number of clicks/conversions and total transaction value from a specific ad," thereby, confirming that the Facebook Pixel successfully transmitted information for at least hundreds of consumers for this ad alone. *See* Defendant's First Amended Response to Plaintiffs' Request for Production, Set One, attached as Exhibit E (filed under seal due to confidentiality designation) ("RFP Responses"). The only way the Facebook Pixel works for marketing is if it can successfully transmit information regarding consumer ticket purchases and videos watched to Meta. ECF No. 32-3, Ex. B at 2. Otherwise, it wouldn't make sense for the defendant to pay Meta for marketing associated with the Facebook Pixel. Defendant's attempt to feign ignorance merely illustrates why class certification is appropriate.

What is certain is that consumer PII is disclosed to Meta. Defendant's argument is merely that there are certain hypothetical situations where information might not get disclosed when a Facebook user buys a ticket or watches a video on Defendant's websites. However, this is irrelevant because the classes only include those consumers whose data has been successfully transmitted by Reading Cinemas' Facebook Pixel. *See* Mot. at 1:24-2:15. Defendant, the party with the information advantage, does not provide any evidence of individuals who fall within the Plaintiffs' proposed class definition but nevertheless did not have their PII disclosed to Meta.

**II. Defendant's standing arguments merely rehash its motion to dismiss.**

Defendant again argues that it is not a "Video Tape Service Provider" under the VPPA. *See* Opp. at 5:26-7:7. And so, Defendant argues that Plaintiffs do not have standing because Defendant did not violate the VPPA. *Id.* This is merely a recitation of Defendant's Motion to Strike Class Allegations and Motion to Dismiss. *See* ECF No. 11. Of course, if Defendant prevails on its motion to dismiss, then Plaintiffs may lack standing of sorts. But this argument is redundant and unnecessary. The cases cited by Defendant—*Osheske* and *Garza*—are on appeal before the Ninth Circuit. *See* United States Court of Appeals for the Ninth Circuit, Docket Nos. 24-2165 and 23-3882. The outcome of those appeals could well affect this case, but the effect will be uniform and should not prevent the Court from granting class certification now. The Plaintiffs have adequately established standing.

In this case, Reading Cinemas has not issued any written discovery or deposed any of the named Plaintiffs. Defendant had an opportunity to develop facts to make a standing challenge, but it chose not to. However, parties can raise the issue of a lack of subject matter jurisdiction at any time. *Swartz v. Dave's Killer Bread, Inc.*, Case No. 4:21-cv-10053, 2024 WL 4614551, at *2 (N.D. Cal. Sept. 20, 2024). As this case progresses, Plaintiffs will seek discovery on specific accounts and account activity. The bottom line is that the parties need to engage in discovery in earnest before this issue is ripe for resolution.

**III. Plaintiffs have established numerosity under Rule 23 and Ninth Circuit caselaw.**

Plaintiffs have presented numerous data points from which a common-sense assumption can be made to determine that the class is numerous. *See Tyus v. Wendy's of Las Vegas, Inc.*, 407 F. Supp. 3d 1088, 1097 (D. Nev. 2019). "Plaintiffs need not establish the precise number of potential class members since courts are empowered to make common sense assumptions to support a finding of numerosity." *Norton v. LVNV Funding, LLC*, Case No. 18-CV-05051, 2020 WL 5910077, at *7 (N.D. Cal. Oct. 6, 2020) (quotation omitted). In the improbable event that, after discovery occurs, the group of plaintiffs is insufficient to satisfy Rule 23(a)(1), Defendant can move to decertify the class. *Id.*

The Court should reject Defendant's reliance on *Martinez* and Eleventh Circuit caselaw. *See* Opp. at 7:8-8:19. If courts accepted the Defendant's reasoning, bad actors could simply evade liability for violations by neglecting to create or maintain records. *Norton*, 2020 WL 5910077, at *7.

When Plaintiffs asked for numbers, Defendant objected and asserted that the numbers are irrelevant. So, Defendant cannot now claim that the numbers are relevant, and that they are necessary for class certification. Moreover, Defendant's records show that for a single ad campaign, there were hundreds of instances where the Meta Pixel transmitted consumer video choices with their Facebook ID. *See* Exhibit E, RFP Responses. The numerosity threshold is met with this alone. Numerosity may have also been found if *Martinez* was venued in the Ninth Circuit; regardless, the numbers established in this case go well beyond the information presented in *Martinez*.

At this early stage, the exact size of the class is unknown, but general knowledge and common sense provide a clear indication that it is large enough. As with the issues raised in Defendant's "ascertainability" arguments, precision will increase as the case progresses.

**IV. Defendant's "Ascertainability" arguments are not supported by the facts or the law.**

In the Ninth Circuit, after *Briseno*, Defendant's reliance on *In re Hulu* is misplaced. *See* Opp. at 10:14-12:14. Defendant's choice to ignore *Briseno* is telling. *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017). Defendant presents administrative feasibility as a requirement for "ascertainability," whether Defendant explicitly names it as such or not. *See* Opp. at 10:14-12:14. And, contrary to Defendant's implication, "there is no feasibility requirement in the Ninth Circuit." *Torres v. Prudential Financial, Inc.*, No. 22-CV-7465-CRB, 2024 WL 4894289, at *8 (N.D. Cal. Nov. 26, 2024).

The relevant question is whether the class is capable of determination; it does not need to be easy or convenient to do so. *See Briseno*, 844 F.3d at 1126. Reading Cinemas does not escape liability merely because certain records of its privacy violations may be incomplete or difficult to attain. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306–07 (9th Cir. 1990). Difficulties with identifying any class members may be dealt with at the administration stage after discovery is complete and the parties have access to all relevant data.

To the degree there is any sort of "ascertainability" issue, it is not a reason to deny class certification. *See Briseno*, 844 F.3d at 1126; *see also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014). Discovery will continue in efforts to recover Meta's event data and all other data surrounding these transactions and privacy violations. If Defendant violated the VPPA, a class should be certified, and Defendant should be held accountable. Difficulties in determining class membership should not prevent certification. *See Six (6) Mexican Workers* , 904 F.2d at 1306–07. Plaintiffs have proposed using event data as a first option because it will only include those transmissions that took place; however, if event data is compromised or incomplete, that will not prevent alternative methods. Mot. at 15:25-18-9. The key is that class membership is capable of determination through clear and objective criteria, which it is.

**V. Common questions are apt to drive the resolution of this litigation.**

Reading Cinemas' conduct creates common issues and these common issues predominate. VPPA liability hinges on the defendant's conduct.

Instead of addressing the common questions identified by Plaintiffs, Defendant attempts to misrepresent the Plaintiffs' allegations, class definitions, and arguments. *See* Opp. at 12:15-13:23. Instead of addressing the common issues that predominate and, thus, are apt to drive the resolution of this litigation—i.e., whether Reading Cinemas is a Video Tape Service Provider or whether the information disclosed constitutes Personally Identifiable Information under the VPPA—Defendant focuses its predominance argument on how, under certain hypothetical circumstances, consumers may not have had their information disclosed to Facebook. *See id*. This is entirely irrelevant. If an individual did not have their information disclosed to Meta, then they are not part of the class.

Defendant's use of the Facebook Pixel constitutes a knowing violation of the VPPA. In contrast to *In re Hulu*, which involved Facebook's "Like" button, the Facebook Pixel is not intended to be visible to website users, and businesses install the Facebook Pixel specifically to track the actions of consumers on their websites. *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 717 (N.D. Cal. 2023). Defendant cannot install the Facebook Pixel and then—once it gets caught violating privacy laws—claim that it doesn't know that it is transmitting consumer information to Facebook. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22-cv-06348, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within.").

All proposed classes are limited to consumers whose "information Reading Cinemas disclosed to Meta." ECF No. 32, Mot. at 1:24-2:15. So, all of Defendant's discussion of how some consumers may not have their information disclosed to Meta is entirely irrelevant—those individuals are not included in the proposed classes. *See id.*

## VI. CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' Motion for Class Certification, the Court should certify the proposed Classes, appoint class representatives, and appoint lead counsel. Alternatively, if the Court finds that class certification is not warranted at this time for any reason, Plaintiffs ask that class certification be denied without prejudice.

Dated: December 13, 2024

Respectfully submitted,

/s/ *Jeremiah W. Nixon*

Anthony G. Simon (pro hac vice)
Jeremiah W. Nixon (*pro hac vice*)
**THE SIMON LAW FIRM, P.C.**
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
E-Mail: asimon@simonlawpc.com
E-Mail: jnixon@simonlawpc.com

Robert T. Eglet; NV Bar No. 3402
Erica D. Entsminger; NV Bar No. 7432
**EGLET ADAMS EGLET HAM HENRIOD**
400 South Seventh Street, Suite 400
Las Vegas, NV 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
E-Mail: eservice@egletlaw.com
*Attorneys* for *Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2024, a true and accurate copy of Plaintiffs' Motion for Class Certification and supporting papers was filed electronically via the Court's CM/ECF system. A notice of filing will be served on all parties by operation of the Court's CM/ECF system, and the parties may access this filing through that system.

/s/ *Jeremiah W. Nixon*
**THE SIMON LAW FIRM, P.C.**